1  FINNEGAN, HENDERSON, FARABOW,
     GARRETT & DUNNER, L.L.P.
2  3300 Hillview Avenue
   Palo Alto, California 94304
3  Tel: (650) 849-6600; Fax: (650) 849-6666
   Robert F. McCauley III (Bar No. 162056)
4  robert.mccauley@finnegan.com

5  FINNEGAN, HENDERSON, FARABOW,
     GARRETT & DUNNER, L.L.P.
6  901 New York Avenue, NW
   Washington, DC 20001
7  Tel: (202) 408-4000; Fax: (202) 408-4400
   J. Michael Jakes (pro hac vice)
8  mike.jakes@finnegan.com
   Gerald F. Ivey (pro hac vice)
9  gerald.ivey@finnegan.com
   Christine E. Lehman (pro hac vice)
10 christine.lehman@finnegan.com
   Michael A. Morin (pro hac vice)
11 michael.morin@finnegan.com
   James R. Barney (pro hac vice)
12 james.barney@finnegan.com

13 Attorneys for Defendants
   Abbott Cardiovascular Systems Inc.,
14 Abbott Laboratories, and Abbott Vascular, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MEDTRONIC VASCULAR, INC. MEDTRONIC USA, INC., MEDTRONIC, INC., MEDTRONIC VASCULAR GALWAY, LTD., and EVYSIO MEDICAL DEVICES, ULC<br><br>Plaintiffs/Counterclaim-Defendants<br><br>v.<br><br>ABBOTT CARDIOVASCULAR SYSTEMS INC., ABBOTT LABORATORIES, and ABBOTT VASCULAR, INC.<br><br>Defendants/Counterclaim-Plaintiffs<br><br>and<br><br>BOSTON SCIENTIFIC CORPORATION<br><br>Counterclaim-Plaintiff. | CASE NO. 06-01066-PJH<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S CONSTRUCTION OF "POLYGON"**<br><br>**Per Court Order, To Be Decided Without A Hearing**<br><br>**Judge: Honorable Phyllis J. Hamilton** |

## I. INTRODUCTION

Plaintiffs' motion for reconsideration of this Court's construction of "polygon" should be denied. Plaintiffs have not satisfied any of the three alternative criteria set forth in Civil L.R. 7-9(b) to justify reconsideration. Instead, in direct violation of Civil L.R. 7-9(c), Plaintiffs have repeated the same attorney arguments regarding "polygon" that they made unsuccessfully to this Court three separate times before the Court's Claim Construction Order.

The Court's construction of "polygon" is correct. It comes directly from the specification. In their claim construction brief, Plaintiffs admitted that "polygon" does *not* have its ordinary or dictionary meaning in the patents-in-suit. (Pls.' Open. Cl. Const. Br. at 23-24.) Yet in their motion for reconsideration, Plaintiffs erroneously contend that the term should be given what they assert is its ordinary meaning. Plaintiffs' motion is entirely without merit and should be denied.

## II. MEMORANDUM OF POINTS AND AUTHORITIES

### A. Plaintiffs Have Failed to Show Any Justification for Reconsideration

Under Civil L.R. 7-9(b), a movant for reconsideration must show either: (1) "a material difference in the fact or law from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought;" (2) an "emergence of new material facts or a change of law occurring after the time of such order;" or (3) a "manifest failure by the court to consider material facts or dispositive legal arguments which were presented to the court before such interlocutory order." Civil L.R. 7-9(b); *Smith v. San Francisco Unified School Dist.*, C03-3715 PJH, 2006 WL 3798139, *2 (N.D. Cal. Dec. 22, 2006).

Here, Plaintiffs have not and cannot satisfy any of these foregoing criteria with respect to the Court's construction of "polygon." Although Plaintiffs allege that the Court manifestly failed to "consider material facts and dispositive legal arguments" (Pls.' Mot. at 1), Civil L.R. 7-9(b)(3), that is simply not true, as explained below.

#### 1. The Court Did Not Manifestly Fail to Apply Controlling Legal Precedent

Plaintiffs contend that, with respect to "polygon," the Court manifestly failed to address the Federal Circuit's precedents in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) and *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002). Specifically, Plaintiffs contend the

Court failed to acknowledge or properly apply the following two principles of *Phillips* and *Teleflex*: (1) that the ordinary meaning of a claim term is presumed, absent an express intent to the contrary; and (2) that claims are not limited by disclosed or preferred embodiments, absent an express intention to do so. (*See* Pls.' Mot. at 2.) Yet the Court's Claim Construction Order specifically discusses each of these principles and cites *Phillips* and *Teleflex* in support thereof. (*See, e.g.,* Dkt. No. 283 at 5 ("Limitations from the specification, such as from the preferred embodiment, cannot be read into the claims absent an express intention to do so.") (citing and quoting from *Teleflex*, 299 F.3d at 1326).) Plaintiffs are simply wrong that the Court did not address *Phillips* and *Teleflex*.

### 2. The Court Did Not Manifestly Fail to Consider Whether the Patentees Intended to Restrict the Meaning of "Polygon"

Plaintiffs next assert the Court's Order "violates the law of the Federal Circuit as set forth in *Phillips* and *Teleflex*" because the Court allegedly failed to consider whether the patentees intended to define "polygon" as "a closed arrowhead shape made up of curved lines, straight lines, or a combination of curved and straight lines." (Pls.' Mot. at 2.) That argument, however, misconstrues the facts and ignores the reasoning set forth in the Court's Order.

Plaintiffs attempt to confuse the issue by suggesting—erroneously—that the construction of "polygon" required a choice between the *ordinary meaning* of "polygon" and a special definition in the specification. (Pls.' Mot. at 2.) In fact, both parties agreed that "polygon" is *not* used in its ordinary sense in the patents. (*See* Pls.' Open. Cl. Const. Br. at 23 (the dictionary definition "would be inappropriate here (a point on which the parties agree)").) Thus, the sole question during claim construction was: how is "polygon" actually defined and used in the patent? In addressing that question, the Court appropriately consulted and relied upon the specification. *See Phillips*, 415 F.3d at 1317 ("It is . . . entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims.").

As the Court's Order correctly explains, the patentees consistently illustrated and described a "polygon" (and "repeating pattern") as an *arrowhead* shape. This is most clearly described below:

It will be appreciated by those of skill in the art that the provision of first **repeating pattern A, as illustrated,** necessarily defines and provides for a **second repeating pattern B**. It will also be appreciated by those of skill in the art that **second repeating pattern B is a mirror image of first repeating pattern A** taken along an axis (not shown) substantially normal to longitudinal axis 45. Thus, in the illustrated embodiments, adjacent rows of repeating pattern A and repeating pattern B may be considered to b[e] interlocking **polygons or "arrowheads"**.



FIG.3

('037 patent, col. 8:52-61, emphasis added.) Thus, acting as their own lexicographers and by using the terms synonymously ("polygons or 'arrowheads'"), the patentees clearly defined "polygon" to mean an arrowhead shape. Under Plaintiffs' construction, the closed, half-arrowhead cells in Fig. 3 could be "polygons." Yet the specification never describes or shades these half-arrowhead shapes as "polygons." Instead, only complete arrowhead shapes are referred to or shaded as a "polygon."

Moreover, the patentees' clear definition is not limited to the best mode or "illustrated embodiments" of Figures 1 and 1A, as Plaintiffs allege. While Plaintiffs myopically argue that the word "arrowhead" appears only once and in the best mode discussion, and that "polygon" appears 20 times in the patents, Plaintiffs ignore that the patents *always* use "polygon" to refer, in pictures and in words, to only arrowhead shapes, and never any other shapes. For instance, each of Figures 1-10 includes shaded regions referred to as "repeating patterns" A and B, which the patent equates to "polygons." (*See id.* at col. 8:39-40, 8:52-61, 9:39-40.) As the Court correctly noted, *each* of these shaded regions "is, in fact, a closed figure in the shape of an arrowhead." (Dkt. No. 283 at 20.)

Furthermore, the patent *defines*, in the Disclosure of the Invention (not the best mode section) a "first repeating pattern" as a "polygon" having the following shape:

> Preferably . . . the intersecting members are arranged to *define a first repeating pattern* comprised of a *polygon* having a pair of side walls substantially parallel to the longitudinal axis . . . a concave-shaped first wall having a first apex and a convex-shaped second wall having a second apex connecting the side walls . . .[T]he first apex (i.e. of the concave-shaped first wall) is directed into the polygon whereas the second apex (i.e. of the convex-shaped second wall) is directed away from the polygon.

('037 patent, col. 4:57-col. 5:4, emphasis added.) This discussion unambiguously describes an arrowhead shape and calls it a "polygon." The "polygon" is never described or illustrated as having any other shape. The specification also explains that the above-defined, arrowhead-shaped, "first repeating pattern" of the invention, when combined with flat apices, "results in an improved stent." ('037 patent, col. 5:20-27.) Coupled with the definition at column 8:61 and Figures 1-10, which consistently shade only arrowhead shapes, the only reasonable conclusion is that the patentees used "polygon" to refer to an arrowhead shape. *See Bell Atl. Network Svcs., Inc. v. Covad Commc'n Group, Inc.,* 262 F.3d 1258, 1271 (Fed. Cir. 2001) ("[W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'").

In addition, the patentees' clear definition of polygons as arrowheads is not changed by the use of the word "may" elsewhere in the above passage. That passage, like other recitations of "polygon" throughout the specification, equates "polygon" with an arrowhead shape. In a similar attempt to skew semantics, plaintiffs try to distinguish "interlocking polygons" from "polygons." This argument, however, fails because the Description of the Invention describes a "polygon," not interlocking polygons, and the "polygon" is always described, in both in the drawings and in prose, as an arrowhead shape.

### 3. Plaintiffs' "Removal of Side Walls" Argument Is Not a "Material Fact" or "Dispositive Legal Argument" Justifying Reconsideration

Plaintiffs incorrectly contend that, because the Court did not specifically address their "removal of side walls" argument in the Claim Construction Order, the Order must be reconsidered pursuant to Civil L.R. 7-9(b)(3). Plaintiffs' "removal of side walls" argument, however, is neither a "material" fact nor "dispositive" of the proper construction of "polygon," as would be required for reconsideration under Civil L.R. 7-9(b)(3).

Plaintiffs' argument depends on a fabricated version of Figure 1, in which side walls 35 and 40 have been removed from every other row, yielding a mixture of arrowhead-shaped cells and non-arrowhead-shaped cells. (Pls.' Mot. at 5.) According to Plaintiffs, because the non-arrowhead-shaped cells in their modified drawing could meet "the *ordinary meaning* of polygon," this Court's

1 construction must necessarily be wrong. (*Id.*) That argument is nonsensical, however, because the parties have agreed that the ordinary meaning of "polygon" does not apply. (Pls.' Br. at 23-24.)

More importantly, the patents never suggest that the modified shaded cells created by Plaintiffs during this litigation are "polygons." Indeed, the evidence is clearly to the contrary. For example, Figures 3-8 and 10 specifically include fully enclosed half arrowhead cells, two of which form full arrowhead cells, yet the specification *never* refers to the half-arrowheads (or any other non-arrowhead shapes) as "polygons." Instead, the only shapes ever referred to as "polygons" in the patents-in-suit are the shaded arrowhead shapes ("repeating patterns") shown in Figures 1-10.

As a fallback, Plaintiffs complain that the Court's "polygon" construction "could cause the jury to conclude that a shape such as that described in col. 9:6-13 as *within* 'the spirit and scope of the invention,' [] is actually *outside* the scope of the claims that recite a 'polygon.'" (Pls.' Mot. at 5.) That argument, however, is based on the false premise that every disclosed embodiment in a patent must be covered by every claim. To the contrary, "[a]n invention may possess a number of advantages or purposes, and there is no requirement that every claim . . . be limited to encompass all of them." *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1370 (Fed. Cir. 2003). Indeed, *none of the asserted claims would cover Plaintiffs' modified Figure 1* because all of the asserted claims require longitudinal flexure members that are "arcuate," "U-shaped," or "curved," and the fabricated Figure 1 comprises only straight longitudinal members.

**B.     Plaintiffs' Motion Violates the Prohibition Against Repetition of Argument**

The only "new" argument by Plaintiffs ("polygon" should have its ordinary meaning) is one they expressly rejected in their *Markman* brief. Otherwise, their motion consists entirely of recycled arguments previously made: (1) in their *Markman* brief, (Dkt. No. 171 at 23-25); (2) in their *Markman* reply brief, filed September 28, 2007, (Dkt. No. 209 at 11-13); and (3) in their letter to the Court of November 12, 2007, (Dkt. No. 278 at 2). Plaintiffs' motion thus violates Civil L.R. 7-9(c).

For the foregoing reasons, Plaintiffs' motion for reconsideration should be denied.

Dated: January 7, 2008                         FINNEGAN, HENDERSON, FARABOW,
                                                              GARRETT & DUNNER, L.L.P.

By: _____/s/_____
Robert F. McCauley III