1  **FOLEY & LARDNER LLP**
   ONE MARITIME PLAZA, 6TH FLOOR
   SAN FRANCISCO, CA 94111-3409
2  TEL: (415) 434-4484; FAX: (415) 434-4507
   NANCY J. GEENEN, BAR NO. 135968
   ngeenen@foley.com
3
   **FOLEY & LARDNER LLP**
4  777 EAST WISCONSIN AVENUE, SUITE 3800
   MILWAUKEE, WI 53202-5306
   TEL: (414) 271-2400; FAX: (414) 297-4900
5  RICHARD S. FLORSHEIM, *PRO HAC VICE*
   rflorsheim@foley.com
6  ATTORNEYS FOR PLAINTIFFS, COUNTERCLAIM
   DEFENDANTS, AND DEFENDANTS TO
7  COMPLAINT-IN-INTERVENTION, MEDTRONIC
   VASCULAR, INC., MEDTRONIC USA, INC., MEDTRONIC,
   INC., AND MEDTRONIC VASCULAR GALWAY, LTD.
8  **KATTEN MUCHIN ROSENMAN LLP**
   525 WEST MONROE STREET
9  CHICAGO, IL 60661-3693
   TEL: (312) 902-5200; FAX: (312) 902-1061
   TIMOTHY J. VEZEAU, *PRO HAC VICE*
10 timothy.vezeau@kattenlaw.com

11 **KEKER & VAN NEST LLP**
   710 SANSOME STREET
   SAN FRANCISCO, CA 94111
12 TEL: (415) 391-5400; FAX: (415) 397-7188
   ROBERT A. VAN NEST, BAR NO. 84065
   rvannest@kvn.com
13
   ATTORNEYS FOR PLAINTIFF, COUNTERCLAIM
14 DEFENDANT, AND DEFENDANT TO COMPLAINT-IN-
   INTERVENTION, EVYSIO MEDICAL DEVICES ULC

15                  UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
16                     SAN FRANCISCO DIVISION

17 MEDTRONIC VASCULAR, INC.,          Case No. 06-01066-PJH
   MEDTRONIC USA, INC., MEDTRONIC,
   INC., MEDTRONIC VASCULAR GALWAY,   **PLAINTIFFS' NOTICE OF MOTION**
18 LTD., and EVYSIO MEDICAL DEVICES   **FOR SUMMARY JUDGMENT AND**
   ULC,                               **MEMORANDUM OF POINTS AND**
19                                     **AUTHORITIES**
           Plaintiffs, Counterclaim
20         Defendants, and Defendants to
           Complaint-in-Intervention,
21                                     **CONTAINS INFORMATION**
        v.                             **DESIGNATED "OUTSIDE COUNSEL**
22                                     **EYES ONLY"**
   ABBOTT CARDIOVASCULAR SYSTEMS,
23 INC., ABBOTT LABORATORIES, and
   ABBOTT VASCULAR, INC.,
24                                     **Hearing Date:  September 24, 2008**
           Defendants and Counterclaim **Time:  9:00 a.m.**
25         Plaintiffs,                 **Location:  Courtroom 3, 17th Floor**

26      and                            **Honorable Phyllis J. Hamilton**

27 BOSTON SCIENTIFIC CORPORATION,

28         Plaintiff-Intervenor.

# TABLE OF CONTENTS

**NOTICE OF MOTION & RELIEF REQUESTED** ................................................. 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ........................................ 2

**SUMMARY OF THE ARGUMENT AND RELEVANT FACTS** ........................ 2

**ARGUMENT** ............................................................................................................ 4

I.      THE DEFENDANTS' INVALIDITY CHALLENGES MUST BE VIEWED IN LIGHT OF THE PROPER PRESUMPTIONS AND BURDEN OF PROOF. ...... 4

II.     AS A MATTER OF LAW, DEFENDANTS CANNOT PROVE INVALIDITY BY REASON OF INDEFINITENESS. ..................................................................... 5

III.    AS A MATTER OF LAW, DEFENDANTS CANNOT PROVE THEIR WRITTEN DESCRIPTION DEFENSE. ......................................................................... 7

     A.      Defendants Are Simply Arguing That the Court's Claim Construction Was Wrong. ..................................................................................................... 8

     B.      Taylor's Opinion That the Claims as Construed Lack an Essential Element of the Patents-In-Suit is Wrong as a Matter of Law. ................................ 8

     C.      Complementary Extension and Compression Is Not an "Essential Element" of All the Penn and Ricci Inventions. ........................................ 9

     D.      Taylor's Opinion Regarding Flexure Members Consisting Only of a U-Shape Ignores the Court's Claim Construction. ..................................... 10

IV.     THE DEFENDANTS CANNOT PROVE INVALIDITY BY ANTICIPATION AS A MATTER OF LAW. ................................................................................ 11

     A.      The Defendants' Burden Is "Especially Difficult" Because the Prior Art Relied on by the Defendants Was Either Previously Considered by the Patent Examiner or Does Not Qualify as Prior Art at All. ....................... 11

     B.      The Defendants Cannot Show Anticipation of the '037 Patent Because None of the Alleged Anticipating References Have Non-Sinusoidal and Arcuate Flexure Members ......................................................................... 12

     C.      The Fischell Patents Cannot Anticipate. .............................................. 15

          1.      The Fischell patents cannot anticipate the '037 patent because they have sinusoidal structures. .......................................................... 15

          2.      The Fischell '442 patent cannot anticipate the claims of the '037 or '255 patents because it does not disclose the structure of an unexpanded stent ........................................................................... 15

     D.      Wijay Cannot Anticipate ..................................................................... 17

          1.      Any flexure members shown in the Wijay '940 patent are sinusoidal and not U-shaped. ........................................................ 17

          2.      Wijay does not "teach" a non-sinusoidal flexure member or a flexure member that is arranged as in the claims ............................ 17

i

3.    Wijay does not disclose a flexure member "interposed" between a pair of straight strut portions. .................................................................... 19

E.    There Is No Dispute of Material Fact That the Secret Fischell Designs Lack Non-Sinusoidal Flexure Members and Are Not Prior Art Because They Were Abandoned, Suppressed and Concealed. ........................................... 20

V.    THE SECRET INTERNAL WORK RELIED ON BY THE DEFENDANTS IS NOT PRIOR ART AND SHOULD NOT BE ADMITTED FOR ANY PURPOSE. ................................................................................................... 21

A.    The Secret Internal Work Is Not Prior Art. .............................................. 22

B.    Abandoned, Suppressed or Concealed Work Is Not Admissible to Show Obviousness. .................................................................................................. 26

1.    The internal work cannot be part of the scope and content of the prior art under § 103. ............................................................... 26

2.    The internal work is not admissible under any other rationale to establish obviousness. .................................................................... 27

VI.    SUMMARY JUDGMENT IS APPROPRIATE ON THE DERIVATION DEFENSE BECAUSE DEFENDANTS CANNOT MEET THEIR BURDEN TO PROVE COMMUNICATION OF THE FISCHELL DESIGNS TO DRS. PENN OR RICCI. ....................................................................................................... 29

VII.    SUMMARY JUDGMENT IS APPROPRIATE ON BSC'S LICENSE DEFENSE BECAUSE BSC HAS NO RIGHTS THAT BAR PLAINTIFFS FROM ALLEGING THAT BSC HAS INFRINGED THE PENN AND RICCI PATENTS. ................................................................................................... 33

VIII.    IT IS UNDISPUTED THAT THE '037 PATENT CLAIMS 1, 8-9, 12-13, 16, 20, AND 55 ARE ENTITLED TO A PRIORITY DATE OF MARCH 5, 1996. ................... 35

CONCLUSION ...................................................................................................... 35

1

**FEDERAL CASES**

2

*Advanced Display Sys., Inc. v. Kent St. Univ.,*
    212 F.3d 1272 (Fed. Cir. 2000)......................................................................16-17

3

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.,*
4     466 F.3d 1000 (Fed. Cir. 2006)..............................................................................6

5

*Amgen, Inc. v. Hoechst Marion Roussel, Inc.,*
    314 F.3d 1313 (Fed. Cir. 2003)...........................................................................8-9

6

*Ampex Corp. v. Abekas Video Sys., Inc.,*
7     No. C-88-5081 EFL, 1990 U.S. Dist. LEXIS 11309 (N.D. Cal. Feb. 7, 1990)......................10

8

*Apotex USA, Inc. v. Merck & Co.,*
    254 F.3d 1031 (Fed. Cir. 2001).........................................................................21-22

9

*Carpet Seaming Tape Licensing Corp. v. Best Seam, Inc.,*
10     694 F.2d 570 (9th Cir. 1982) ................................................................................32

11

*Celotex v. Catrett,*
    477 U.S. 317 (1986)...............................................................................................5

12

*Cont'l Can Co. v. Monsanto Co.,*
13     948 F.2d 1264 (Fed. Cir. 1991)............................................................................17

14

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods.,*
    291 F.3d 1317 (Fed. Cir. 2002)..............................................................................9

15

*Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.,*
16     807 F.2d 955 (Fed. Cir. 1986)..............................................................................28

17

*Diversitech Corp. v. Century Steps, Inc.,*
    850 F.2d 675 (Fed. Cir. 1988)..............................................................................11

18

*Dow Chem. Co. v. Astro-Valcour, Inc.,*
19     267 F.3d 1334 (Fed. Cir. 2001)............................................................................22

20

*E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.,*
    849 F.2d 1430 (Fed. Cir. 1988)............................................................................26

21

*Exxon Research & Eng'g Co. v. United States,*
22     265 F.3d 1371 (Fed. Cir. 2001)..............................................................................6

23

*Flex-Rest, L.L.C. v. Steelcase, Inc.,*
    455 F.3d 1351 (Fed. Cir. 2006).........................................................................21-22

24

*Gambro Lundia AB v. Baxter Healthcare Corp.,*
25     110 F.3d 1573 (Fed. Cir. 1997)......................................................................29-30, 32

26

*Gentry Gallery, Inc. v. Berkline Corp.,*
    134 F.3d 1473 (Fed. Cir. 1998).........................................................................8-10

27

*Glaxo Group, Ltd. v. Apotex, Inc.,*
28     376 F.3d 1339 (Fed. Cir. 2004)............................................................................11

iii

*Graham v. John Deere Co. of Kansas City,*
    383 U.S. 1 (1966) ................................................................................................26

*Grinnell Corp. v. Va. Elec. & Power Co.,*
    277 F. Supp. 507 (E.D. Va. 1967) ...............................................................27, 29

*Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.,*
    401 F.3d 1367 (Fed. Cir. 2005).................................................................................7

*In re Antle,*
    444 F.2d 1168 (C.C.P.A. 1971).............................................................................28

*In re De Seversky,*
    474 F.2d 671 (C.C.P.A. 1973) ..............................................................................16

*In re Saunders,*
    444 F.2d 599 (C.C.P.A. 1971) ..............................................................................16

*Innovative Scuba Concepts, Inc. v. Feder Indus., Inc.,*
    26 F.3d 1112 (Fed. Cir. 1994)..................................................................................5

*Intel Corp. v. U.S. Int'l Trade Comm'n,*
    946 F.2d 821 (Fed. Cir. 1991)..................................................................................5

*International Glass Co. v. United States,*
    408 F.2d 395 (Ct. Cl. 1969) ..................................................................................28

*Maxwell v. K. Mart Corp.,*
    880 F. Supp. 1323 (D. Minn. 1995) .................................................................30, 32

*Miles Labs., Inc. v. Shandon, Inc.,*
    997 F.2d 870 (Fed. Cir. 1993)..................................................................................7

*Oak Indus., Inc. v. Zenith Elecs. Corp.,*
    726 F. Supp. 1525 (N.D. Ill. 1989) .......................................................................23

*OddzOn Prods., Inc. v. Just Toys, Inc.,*
    122 F.3d 1396 (Fed. Cir. 1997)..............................................................................28

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,*
    806 F.2d 1565 (Fed. Cir. 1986)...........................................................................4-5

*Personalized Media Commc'ns v. Int'l Trade Comm'n,*
    161 F.3d 696 (Fed. Cir. 1998)..................................................................................7

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005).................................................................................6

*Price v. Symsek,*
    988 F.2d 1187 (Fed. Cir. 1993)..............................................................................30

*S. Corp. v. United States,*
    690 F.2d 1368 (Fed. Cir. 1982) (*en banc*) ............................................................28

*Transclean Corp. v. Bridgewood Servs., Inc.,*
    290 F.3d 1364 (Fed. Cir. 2002)..........................................................................5, 18

iv

*Trintec Indus., Inc. v. Top-U.S.A. Corp.*,
    295 F.3d 1292 (Fed. Cir. 2002)..............................................................................19

*UMC Elecs. Co. v. United States*,
    816 F.2d 647 (Fed. Cir. 1987)...............................................................................22


**FEDERAL STATUTES**

35 U.S.C. § 102..................................................................................11, 22, 26

35 U.S.C. § 102(f).............................................................................29-30, 33

35 U.S.C. § 102(g)................................................................................*Passim*

35 U.S.C. § 102(g)(2).........................................................................20, 22, 27

35 U.S.C. § 103........................................................................................26-27

35 U.S.C. § 103(a)........................................................................................26

35 U.S.C. § 112, ¶ 1..................................................................................3, 7-9

35 U.S.C. § 112, ¶ 2..................................................................................3, 5-7

35 U.S.C. § 282...............................................................................................4


**RULES**

Rule 56 of the Federal Rules of Civil Procedure .....................................................1

v

## NOTICE OF MOTION & RELIEF REQUESTED

PLEASE TAKE NOTICE THAT at 9:00 a.m., on September 24, 2008, or as soon thereafter as the matter may be heard in Courtroom 3, 17th Floor of the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California, Plaintiffs will and hereby do move this Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for an order granting summary judgment in favor of the Plaintiffs and against Abbott Cardiovascular Systems, Inc., Abbott Laboratories, Abbott Vascular, Inc., and Boston Scientific Corporation (collectively, "Defendants[1]"). This motion is supported by Plaintiffs' Memorandum of Points and Authorities, the accompanying declaration of Kevin J. Malaney, all pleadings and documents on file with the Court, any reply memoranda that may be filed, the argument of counsel, and any evidence presented at the hearing.

As there are no genuine issues of material fact, Plaintiffs seek summary judgment that:

(1) The asserted claims of U.S. Patent Nos. 6,858,037 ("'037 patent") and 7,094,255 ("'255 patent") (the "patents-in-suit") are not invalid as indefinite under 35 U.S.C. § 112, ¶ 2;

(2) The asserted claims of the patents-in-suit are not invalid under the written description requirements of 35 U.S.C. § 112, ¶ 1;

(3) The patents-in-suit are not invalid under 35 U.S.C. § 102 as anticipated by U.S. Patent Nos. 6,053,940 (Wijay), 5,607,442 (Fischell) or by secret Robert, David, or Tim Fischell designs;

(4) The abandoned, suppressed and concealed work of the Fischells, Brian Brown, Matt Birdsall, Dan Cox, and Tim Limon is not prior art to the patents-in-suit and cannot be admitted as evidence of obviousness under 35 U.S.C. § 103;

(5) The inventions claimed in the patents-in-suit were not derived from the designs of Robert, David, or Tim Fischell, and are not invalid under 35 U.S.C. § 102(f);

(6) BSC does not have license rights in the patents-in-suit; and

(7) The '037 patent claims 1, 8-9, 12-13, 16, 20, and 55 are entitled to a priority date of March 5, 1996.

---

[1] Boston Scientific is an intervenor, rather than a true defendant. Nonetheless, as it is aligned with the defendants, makes the same invalidity arguments, and will brief these issues jointly with the defendants, Plaintiffs include it as part of the defendant group for ease of reference. Separately, Plaintiffs will refer to the "Abbott Defendants" or "BSC."

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs move for summary judgment as to Defendants' claims of indefiniteness, lack of written description, anticipation and derivation, and for summary judgment as to BSC's license defense. In the face of the stiff clear and convincing standard of proof, Defendants rely on the same prior art that was expressly considered by the PTO examiners who determined the Penn and Ricci inventions to be patentable. Defendants also trot out the allegations that were previously rejected in the IsoStent litigation, including the Fischell designs that are not prior art at all, because they were abandoned, suppressed and concealed.

Defendants also persist in arguments already rejected by the Court in this case, as part of its claim construction. The claims require a stent having a "flexure member" that is "non-sinusoidal" and "arcuate," or, in some cases, a flexure member that is "U-shaped." Though the disputed claim terms were construed by the Court, Defendants now say some of them are indefinite. Though the Court construed "non-sinusoidal" to mean "not S-shaped," Defendants attempt to prove anticipation by arguing that a sinusoidal S-shaped flexure member can meet the non-sinusoidal limitation. And though the Court already rejected the argument that the claims require a flexure member that exhibits substantially complementary extension and compression, Defendants now argue that this is an essential element, and that there is no adequate written description for a claim that is U-shaped or does not perform this function. As these arguments are all species of arguments that the Court has already addressed – and rejected – summary judgment is appropriate.

## SUMMARY OF THE ARGUMENT AND RELEVANT FACTS

This case concerns infringement by the Defendants of two patents, the '037 patent and '255 patent, issued on February 22, 2005 and August 22, 2006, respectively, to Drs. Ian M. Penn and Donald R. Ricci. (Malaney Decl. Exs. 1, 2.) Plaintiffs allege that the Defendants' stents infringe one or more of claims 1, 8-9, 12-13, 16-17, 20, 22, 29-30, 33-34, 40-41, 43, 45-48, 52-53, and 55-57 of the '037 patent and claims 11-13 and 15-16 of the '255 patent.

At issue in this motion are Defendants' contentions that (1) claim terms are indefinite; (2) the patents-in-suit do not meet the written description requirement; (3) the asserted claims are

2

1    anticipated by U.S. Patent Nos. 5,607,442 ("Fischell '442 patent"), 5,643,312 ("Fischell '312

2    patent"), and 6,053,940 ("Wijay '940 patent"), and by stent designs developed by Robert, David,

3    and Tim Fischell ("Fischell designs"); (4) secret internal drawings that are not "prior art" can be

4    used to prove invalidity; and (5) the patents-in-suit were derived from certain Fischell designs.

5    Also at issue is BSC's license defense, supported by an agreement to which Plaintiffs are not a

6    party.  Affirmatively, Plaintiffs seek only to establish uncontroverted priority dates.

7           As for the first contention, Defendants assert that three claim terms are indefinite under

8    35 U.S.C. § 112, ¶ 2:  "flexure member," "arcuate," and "U-shaped."  (Taylor Rpt. I at 102-109;

9    Malaney Decl. Ex. 3.)  This Court construed "flexure member" and "arcuate."  (Order Constr.

10   Claims at 29; Dkt. # 283; Malaney Decl. Ex. 4.)  Because the Court construed these claims, the

11   Defendants' indefiniteness argument fails as a matter of law.  The parties agreed that the

12   remaining term, "U-shaped," should be given its ordinary meaning, and, even now, both parties

13   are able to advance a meaning – they just cannot agree on one.  (Taylor Rpt. I at 106; Second

14   Exp. Rpt. of Professor Martin T. Rothman ("Second Rothman Exp. Rpt.") at ¶ 156; Malaney

15   Decl. Exs. 3, 5.)  "U-shaped" is not indefinite.

16          Defendants also argue that the patents-in-suit are invalid for failure to meet the written

17   description requirements of 35 U.S.C. § 112, ¶ 1, because, they say, "substantially

18   complementary extension and compression" is an "essential element" of the invention that is

19   absent from the claims as construed, and the patents-in-suit do not describe a flexure member

20   consisting only of a U-shape.  This attempt to avoid the Court's claim construction also fails as a

21   matter of law because there is no "essential element" requirement in the patent law and the claim

22   construction issue can and has been decided by the Court.

23          As for anticipation, Drs. Penn and Ricci were the first to discover and patent a stent

24   having, *inter alia*, "peak-to-valley" connectors, where the connectors have a non-sinusoidal and

25   arcuate (and in some cases U-shaped) structure.  There is no dispute that no prior art reference

26   has this structure.  For this reason, Defendants' anticipation defense fails as a matter of law.

27          Recognizing that they have no actual prior art to rely on (or at least none not already

28   considered and rejected by experienced PTO examiners), Defendants have attempted to fill the

                                                3

1   holes in their invalidity defense by relying on designs that are <u>not prior art</u>, and were abandoned,

2   suppressed or concealed by their supposed designers.  There is no real dispute that these designs

3   are not prior art, and Plaintiffs seek a finding from the Court to that effect.  However, Defendants

4   are attempting to rely on these references <u>as though they were prior art</u> to show what one of skill

5   in the art would have thought at the time of the doctors' inventions.  This is improper under the

6   patent laws and would be highly confusing to the jury if admitted.  The Court should preclude

7   admission of this evidence by granting summary judgment that these designs cannot, as a matter

8   of law, provide a basis for an attack on the validity of an issued patent.

9          There is also no evidence to support Defendants' contention that the patents-in-suit were

10  derived from secret Fischell designs.  George Shukov of LPL Systems, Inc. ("LPL") cut

11  prototype stents for Drs. Penn and Ricci.  He also cut stents for other companies, including

12  IsoStent (and ACS, BSC and Medtronic).  Defendants assert that Mr. Shukov communicated

13  information about IsoStent's designs to Drs. Penn and Ricci – but there is no evidence to support

14  that claim.  No witness so testified.  Indeed, all of the witnesses with personal knowledge

15  testified that Mr. Shukov did not pass information to the doctors.  (Ricci 30(b)(6) Dep. 49:18-21;

16  51:16-21; 51:23-54:19 and Shukov Dep. 93:2-95:16, 161:20-162:9, Feb. 9, 2004; Malaney Decl.

17  Exs. 6-7.)  Moreover, this argument has already been rejected by another judge who reviewed the

18  evidence under a lower "preponderance" standard and determined that the doctors independently

19  developed their invention.  Here, Defendants cannot meet their clear and convincing burden.

20         Finally, BSC's license defense is based on a November 1995 Consulting Agreement.

21  (Malaney Decl. Ex. 8.)  However, because the agreement does not bind Plaintiffs (who are not

22  parties to it), this defense, too, fails as a matter of law and should not survive summary

23  judgment.

24                                          **ARGUMENT**

25  **I.    THE DEFENDANTS' INVALIDITY CHALLENGES MUST BE VIEWED IN
        LIGHT OF THE PROPER PRESUMPTIONS AND BURDEN OF PROOF.**
26
27         Patents are presumed valid.  35 U.S.C. § 282.  Accordingly, a patentee need submit no

28  evidence in support of a conclusion of validity.  *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,

                                              4

806 F.2d 1565, 1570 (Fed. Cir. 1986).  A party challenging validity, however, must overcome the statutory presumption by clear and convincing evidence, and establish facts supporting the conclusion of invalidity.  *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 834 (Fed. Cir. 1991); *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002).  To be clear and convincing, the evidence must produce a firm belief or conviction that the matter sought to be established is highly probable and free from serious doubt.  *Orthokinetics*, 806 F.2d at 1570.  The validity of a patent may be upheld solely on the failure of a challenger's evidence to convincingly establish the contrary.  *Id.*  If and only if the challenger presents a prima facie case of invalidity, then the patentee may have to come forward with rebuttal evidence. *Innovative Scuba Concepts, Inc. v. Feder Indus., Inc.*, 26 F.3d 1112, 1115 (Fed. Cir. 1994).  The presumption of validity, however, remains intact and the ultimate burden of proving invalidity remains with the Defendants.  *Id.*

Courts considering summary judgment must be mindful of the presumptions and burdens of proof assigned to the moving and non-moving parties.  *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986).  Accordingly, where a party with the burden fails to come forward with sufficient evidence to support an essential element of a claim, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial.  *Id.*

## II.     AS A MATTER OF LAW, DEFENDANTS CANNOT PROVE INVALIDITY BY REASON OF INDEFINITENESS.

In their pleadings, Defendants allege that certain claim terms do not meet the definiteness requirements of 35 U.S.C. § 112, ¶ 2, which provides that a patent specification must end with one or more claims "particularly pointing out and distinctly claiming subject matter which the applicant regards as his invention."  35 U.S.C. § 112, ¶ 2 (2006); (Second Am. Answer at ¶¶ 61, 100 and Countercls. at ¶ 21; Dkt. # 180-2; BSC's First Am. Compl. in Intervention at ¶ 32; Dkt. # 168.)  Defendants now contend three terms are indefinite:  "flexure member," "arcuate," and "U-shaped."  (Taylor Rpt. I at 102-09; Malaney Decl. Ex. 3.)  Two of these terms have already been construed by the Court.  The third was used by the Court in defining other terms, and has been defined by experts on both sides.  Thus, the issue for summary judgment is whether claims

1   that are amenable to construction can be indefinite.  Since such claims cannot be indefinite as a

2   matter of law, Plaintiffs are entitled to summary judgment.  *Aero Prods. Int'l, Inc. v. Intex*

3   *Recreation Corp.*, 466 F.3d 1000, 1016 (Fed. Cir. 2006) (terms amenable to construction cannot

4   be indefinite as a matter of law).

5       Claim construction is a matter of law for the Court.  *Phillips v. AWH Corp.*, 415 F.3d

6   1303, 1312-13 (Fed. Cir. 2005).  Successful construction of a claim term is dispositive of a §

7   112, ¶ 2 indefiniteness argument:  "[i]f a claim is amenable to construction, 'even though the task

8   may be formidable and the conclusion may be one over which reasonable persons will disagree,'

9   the claim is not indefinite."  *Aero Prods.*, 466 F.3d at 1016 (quoting *Exxon Research & Eng'g*

10  *Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)).

11      Here, the Court construed "flexure member" and "arcuate" during claim construction and

12  noted no confusion or apprehension in doing so.  (Order Constr. Claims at 11-14, 17-18; Dkt. #

13  283; Malaney Decl. Ex. 4.)[2]  Accordingly, Defendants' assertion that "flexure member" and

14  "arcuate" are indefinite fails as a matter of law.  *E.g., Exxon*, 265 F.3d at 1375.[3]

15      As for the term "U-shaped," it was not presented to the Court <u>because the Defendants</u>

16  <u>said the term should be given its "ordinary meaning" and did not require construction.</u>  (Defs.'

17  Prelim. Claim Constr. at 3; Malaney Decl. Ex. 9.)  The Defendants now attempt to change

18  course, and advance the untenable position that a person of ordinary skill in the art could not

19  possibly have understood what "U-shaped" meant.  The Court should not tolerate such tactics.

20      Although the Court did not specifically construe  "U-shaped," the Court's Claim

21  Construction Order repeatedly refers to U-shapes in its construction of other claim terms.  For

---

23  [2] Interestingly, the Defendants <u>never</u> mentioned the indefiniteness of these terms in
24  thirty-five pages of claim construction briefing – despite the fact that "flexure member" and
    "arcuate" were construed terms.  (Abbott Answering Claim Const. Br.; Dkt. # 195.)  Indeed
25  although the Defendants contended in another document that five claim terms were indefinite,
    they did not identify "U-shaped" as one such claim term.  (Defs.' Prelim. Claim Const. at 2;
26  Malaney Decl. Ex. 9.)

27  [3] While Defendants have now belatedly, by way of their expert, attempted to raise
    additional claim construction issues regarding flexure members, these issues are easily resolvable
28  by this Court and cannot support a claim of indefiniteness.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 06-01066-PJH

1  example, the court concludes: "[f]rom the claim language set forth in both patents … the court

2  can discern that a 'flexure member' is part of a 'longitudinal portion' and can be 'non-sinusoidal

3  and arcuate,' or 'U-shaped.'"  (Order Constr. Claims at 12, emphasis added; Dkt. # 283; Malaney

4  Decl. Ex. 4.)  In so doing, the Court never noted any confusion or definitional problem with the

5  term "U-shaped."  The Court actually included "U-shape" in part of the definition of a different

6  construed claim term.  (*Id.* at 29.)  The Court obviously did not consider this term to be

7  unintelligible.

8        Further, the opinion of Defendants' expert, Professor Taylor, actually supports a

9  determination that the claim term "U-shaped" is <u>definite</u>.  Taylor opines that "'U-shaped' means

10  having the general shape of the letter 'U'."  (Taylor Rpt. I at 106; Malaney Decl. Ex. 3.)  All

11  § 112, ¶ 2 requires is that a claim term "read in light of the specification reasonably apprise those

12  skilled in the art of the scope of the invention."  *Miles Labs., Inc. v. Shandon, Inc.*, 997 F.2d 870,

13  875 (Fed. Cir. 1993).  Since their own expert opines that he understands what a person of

14  ordinary skill in the art understood "U-shaped" to mean in 1996-97, Defendants cannot possibly

15  argue that a claim containing "U-shaped" has indefinite scope.

16        In sum, because the terms the Defendants point to are amenable to construction,

17  Defendants' § 112, ¶ 2 allegations are contrary to clear precedent, and unsupportable.[4]

18  **III.  AS A MATTER OF LAW, DEFENDANTS CANNOT PROVE THEIR WRITTEN DESCRIPTION DEFENSE.**

19        The Defendants allege that the patents-in-suit do not meet the written description

20  requirement of 35 U.S.C. § 112, ¶ 1.  (Second Am. Answer at ¶¶ 60, 99 and Countercls. at ¶ 21;

21  Dkt. # 180-2; BSC's First Am. Comp. in Intervention at ¶ 32; Dkt. # 168.)  Defendants' theories

22

23      [4] The allegations are also <u>unsupported</u> because Professor Taylor's report is based on a
flawed analysis of material totally irrelevant to an indefiniteness determination under § 112, ¶ 2.

24  A definiteness inquiry must focus narrowly on the claims and specification.  *Personalized Media Commc'ns v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998).  Taylor's analysis

25  includes <u>no</u> discussion of the claims or specifications of the patents-in-suit.  Instead, Professor
Taylor improperly relies on a 2004 reexamination request for a completely different patent and

26  2008 *denials* of Requests for Admissions regarding other patents, even though it is "[t]he
perspective of a person of ordinary skill in the art <u>at the time of the patent application</u> [that]

27  governs the definiteness analysis."  *Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, 401
F.3d 1367, 1371 (Fed. Cir. 2005) (emphasis added).

28

relate to the arguments the Court already rejected in claim construction, and they should be rejected here too.

### A.      Defendants Are Simply Arguing That the Court's Claim Construction Was Wrong.

The Defendants argued unsuccessfully during claim construction that there was no support for a single U-shape, and that the Court should read a limitation from the specification – "facilitating substantially complementary extension and compression" – into the claim term "flexure member." (Abbott's Answering Claim Constr. Br. at 16-20; Dkt. # 195.) This Court has already rejected this argument, concluding:

> that "flexure members," as lesser parts of the longitudinal portions, are not themselves required to provide for such extension and compression.

(Order Constr. Claims at 14, emphasis added; Dkt. # 283; Malaney Decl. Ex. 4.) Defendants' written description defense now seeks to reverse that decision by arguing that the claims are invalid because they do not require "substantially complementary extension and compression."

### B.      Taylor's Opinion That the Claims as Construed Lack an Essential Element of the Patents-In-Suit is Wrong as a Matter of Law.

A patent "specification shall contain a written description of the invention." 35 U.S.C. § 112, ¶ 1 (2006). The written description requirement is met if the patentee "recounts his invention in such detail that his future claims can be determined to be encompassed within his original creation." *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1397 (Fed. Cir. 2003) (internal citations omitted).

Professor Taylor is under the impression that § 112, ¶ 1 includes an "essential element" requirement. (Taylor Rpt. I at 111 ("I have been informed that omission of an essential element can render claims invalid as lacking support in the written description."); Malaney Decl. Ex. 3.) This impression is likely based on dicta from *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998) – a case the Federal Circuit has since said established no such test.

*Gentry Gallery* involved electronic controls for a reclining sofa. The disclosure was explicit that the only possible location for the controls was on a console between reclining seats of the sofa. *Id.* at 1479. Because the "disclosure unambiguously limited the location of the

1   controls to the console," claims that covered other control locations violated § 112, ¶ 1. *Id.* at

2   1480. This was hardly a radical conclusion, and the Federal Circuit has since made clear that

3   *Gentry Gallery* created no § 112, ¶ 1 "essential element" test:

4   > [In *Gentry*,] we did not announce a new "essential element" test
   > mandating an inquiry into what an inventor considers to be
5   > essential to his invention and requiring that the claims incorporate
   > those elements . . . .

6   *Cooper Cameron Corp. v. Kvaerner Oilfield Prods.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002). *See*

7   *also Amgen, Inc.*, 314 F.3d at 1333 (refusing to adopt an "essential element" test because *Gentry*

8   was not a "watershed case" and the "essential element" language was "probably only dicta").

9       As *Cooper Cameron* and *Amgen* make clear, there is no "essential element" test to § 112,

10   ¶ 1. Therefore, any argument that the asserted claims are invalid because they lack an "essential

11   element" of the disclosed invention is wrong as a matter of law.

12
       **C.    Complementary Extension and Compression Is Not an "Essential Element"
13             of All the Penn and Ricci Inventions.**

14       No matter what the precedential value of *Gentry Gallery*, it is inapposite here. In *Gentry*

15   *Gallery*, the location of the controls was the invention. *Gentry Gallery*, 134 F.3d at 1475, 1479

16   ("In this case, the original disclosure clearly identifies the console as the only possible location

17   for the controls."). Unlike *Gentry Gallery*, this is not a case where the specification clearly

18   excluded the scope of the claim limitation in question.

19       Here, flexure means that facilitate "complementary extension and compression" are

20   merely described as being an "aspect of the present invention." ('037 patent col.3 ll.33-35;

21   Malaney Decl. Ex. 1.) Indeed, the specifications say that the inventions described therein may

22   be "with or without flexure means present." (*Id.* at col.5, l.23.) The specification uses the same

23   terminology – an "aspect" of the present invention – to describe "bifurcated" stents. (*Id.* at col.7

24   ll.8-13.) There can be no dispute that a "bifurcated" stent is not an "essential element" of every

25   invention described or claimed in the '037 patent. Yet, the Defendants' argument would also

26   mean that only claims that required that the stent be "bifurcated" would have written description

27   support. This argument cannot withstand scrutiny.

28

9

1    In fact, it is black letter law that every claim recites a different invention. *See, e.g.,*

2  *Ampex Corp. v. Abekas Video Sys., Inc.*, No. C-88-5081 EFL, 1990 U.S. Dist. LEXIS 11309, at

3  *6 (N.D. Cal. Feb. 7, 1990) ("[E]ach patent claim is to be treated as a separate invention . . . .").

4  The same original Penn and Ricci patent application has so far yielded six different patents. The

5  Defendants cannot credibly claim that each feature of each embodiment of the invention must be

6  in each claim. This is not a "one invention" patent, like the one at issue in *Gentry Gallery*.

7  Accordingly, *Gentry Gallery* is inapplicable to the current case.

8         **D.    Taylor's Opinion Regarding Flexure Members Consisting Only of a U-Shape**
              **Ignores the Court's Claim Construction.**
9

10        Now shined up in Taylor's expert report, Defendants trot out their old "flexure member"

11  claim construction argument, pointing again to the fact that the specification does not show the

12  bottom portion of Figure 12g alone and arguing, as the Defendants did in claim construction, that

13  a person of ordinary skill in the art would not understand that the patentees' inventions included

14  a single U-shape. (*Id.* at 111-13.) This Court has already rejected this argument, specifically

15  finding that the patents-in-suit support construing a flexure member as "part of the longitudinal

16  portion that provides flexibility." (Order Constr. Claims at 14; Dkt. # 283; Malaney Decl. Ex. 4.)

17        The patents-in-suit amply support this Court's ruling. The patents-in-suit unambiguously

18  state that the shape of the flexible portion of the longitudinal strut "is <u>not particularly restricted.</u>"

19  ('037 patent col.3 ll 57-62, emphasis added; Malaney Decl. Ex. 1.) By way of example, Figures

20  5-9 and 12a-12g depict longitudinals with many different shapes – some containing one shape

21  (*e.g.*, the single gentle curve of Fig. 5, the S-shapes of Figures 8 and 9, or the single Omega

22  shape of 12d), and some containing two shapes (*e.g.*, 12c). (*Id.* at Figs. 12a-12g, col.9 ll.19-22.)

23  The specification makes clear that the Figures do not contain the exclusive set of embodiments.

24  (*See id.* at col.11 ll.59-61 ("Other specific designs which are with[in] the spirit

25  and scope of the present invention will be apparent to those of skill in the art.").)

26        As for Figure 12g, it explicitly shows both an omega-shaped (Ω)flexure

27  member and a U-shaped flexure member – separated from each other by a

28  straight strut. (*Id.* at Fig. 12g, as shown at right.) Figure 12g is described as "an



FIG.12g.

10

1    opposed omega (facilitates extension)/U-joint (facilitates compression)."  (*Id.* at col.11 ll.54-56.)

2    Crucially, even though the patents' description of the single omega was that it merely "facilitates

3    extension," the description of Figure 12d makes plain that a single omega is nonetheless a

4    "flexure means."  (*Id.* at Fig. 12d, col.11 ll.49-50.)  A person of ordinary skill in the art, like the

5    Court in its claim construction ruling, would understand that a longitudinal with a single U-

6    shaped portion could likewise stand alone, particularly in view of other figures, like Figure 5,

7    including only one shape.  (*Id.* at col.9-10 ll.24-2.)  The specifications of the patents-in-suit

8    contain ample support for a flexure member consisting only of a U-shape.  (Second Rothman

9    Exp. Rpt. at ¶¶ 356-361; Malaney Decl. 5.)  The Court's claim construction need not be

10   revisited, and the written description requirement is met.

11   **IV.    THE DEFENDANTS CANNOT PROVE INVALIDITY BY ANTICIPATION AS A
         MATTER OF LAW.**

12   **A.    The Defendants' Burden Is "Especially Difficult" Because the Prior Art
13          Relied on by the Defendants Was Either Previously Considered by the Patent
             Examiner or Does Not Qualify as Prior Art at All.**

14          The Federal Circuit has explained on numerous occasions that carrying the already heavy

15   burden on the patent challenger "is 'especially difficult' when, as is the present case, the

16   infringer attempts to rely on prior art that was before the patent examiner during prosecution."

17   *Glaxo Group, Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004) (citing *Al-Site Corp. v.*

18   *VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999)).  Here, the only true prior art the

19   Defendants rely on for their anticipation defense is prior art that was expressly considered by the

20   PTO:  Fischell '442 patent, Fischell '312 patent, and Wijay '940 patent.  (Malaney Decl. Exs.

21   10-12.)  The burden on the Defendants is thus "especially difficult."

22          The Defendants cannot carry this heavy burden because the prior art does not contain

23   every element of the claimed inventions. *Diversitech Corp. v. Century Steps, Inc.*, 850 F.2d 675,

24   677 (Fed. Cir. 1988) ("For a prior art reference to anticipate in terms of 35 U.S.C. § 102, every

25   element of the claimed invention must be identically shown in a single reference.")  All of this

26   prior art contains exclusively "sinusoidal" or "s-shaped" flexure members.  The claims of the

27   '037 patent all require "non-sinusoidal" flexure members.  This simple but indisputable fact

28   dooms the Defendants' anticipation defense as to the '037 patent.

11

As for the '255 patent, all the asserted claims require a peak-to-valley stent with each longitudinal portion having a single flexure member that comprises a U-shape that is interposed between two straight strut portions. ('255 patent claim 11; Malaney Decl. Ex. 2.)  The Defendants rely on the Wijay and Fischell references which were considered by the examiner. Regarding Wijay, there can be no real dispute:  no single longitudinal portion has a "flexure member interposed between a pair of straight strut portions."  Defendants' only argument requires the Court to ignore pertinent structure in the Wijay design.  Regarding the Fischell patents, the Defendants rely on a flawed incorporation argument.  All the elements, as required, are not found in a single reference.

The other references the Defendants attempt to rely on are secret and abandoned designs created by the Fischells.  However, that work was never made public; rather, the undisputed facts establish that these Fischell designs were actively suppressed and concealed and ultimately abandoned by the Fischells.  For these reasons, pursuant to 35 U.S.C. § 102(g), these secret designs are not prior art and cannot form the proper basis of an anticipation defense.[5]

**B.**     **The Defendants Cannot Show Anticipation of the '037 Patent Because None of the Alleged Anticipating References Have Non-Sinusoidal and Arcuate Flexure Members.**

The Defendants' anticipation claim regarding the '037 patent may be easily dismissed.  Every claim of the '037 patent requires "non-sinusoidal" and "arcuate" flexure members.  ('037 patent cols.14-18; Malaney Decl. Ex. 1.) Some of the asserted claims have further refinements:  claim 17, for example, requires a flexure member that "is U-shaped"; claim 43 requires a flexure member that is non-sinusoidal and comprises portions that are straight and "substantially orthogonal" (*i.e.*, perpendicular) to the longitudinal axis of the stent.  All, however, must be "non-sinusoidal."



FIG.12g.

---

[5] For the Court's convenience, a chart summarizing the elements missing from the allegedly anticipatory references is attached as Exhibit A.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 06-01066-PJH

1    The claimed non-sinusoidal flexure members are identified in the prosecution history as

2   being found in Figure 5, and the U-shaped flexure member with straight, orthogonal sides is

3   specifically identified as the bottom half of Figure 12g. ('037 Pros. Hist. at MDT_1038270-73;

4   Malaney Decl. Ex. 13.)  In view of the express references in the specification to certain shapes,

5   including Figures 8 and 9, as being "sinusoidal" or "S-shaped," ('037 patent col.10 ll.33-34, 45-

6   46; Malaney Decl. Ex. 1), the Court properly interpreted non-sinusoidal to mean "not S-shaped."

7   (Order Constr. Claims at 17; Dkt. # 283; Malaney Decl. Ex. 4.)

8    None of the Wijay or Fischell patents or designs have <u>non-sinusoidal</u> flexure members;

9   they all have <u>sinusoidal</u> structures.  This is apparent from the images of the stents below:



**Wijay '940 patent**

*FIG. 2A*



**Fischell '312 patent**

FIG.8



**Fischell '442 patent**

FIG. 1

26    Because these references do not have "non-sinusoidal" flexure members in their stent

27   designs, as claimed in each asserted claim of the '037 patent, they simply cannot anticipate those

28   claims.

13

1    The Defendants contest this conclusion.  They argue that the S-shaped structures in the

2 alleged prior art references can be cut into non-sinusoidal pieces.  This contention, of course, is

3 merely an argument about claim construction – *i.e.*, whether, by picking out only a portion of a

4 sinusoidal flexure member and calling it "non-sinusoidal," the non-sinusoidal limitation of the

5 claims can be read to cover sinusoidal structures.  Certainly, this is an argument the Defendants

6 could (and should) have raised when the Court previously considered the parties' claim

7 construction arguments.

8    More to the point, the Defendants' position is absurd.  By the Defendants' argument,

9 every flexure member would meet the non-sinusoidal limitation, because every "S" necessarily

10 contains a portion which, if viewed in isolation, is not itself "S-shaped."  This argument would

11 read the "non-sinusoidal" limitation entirely out of the claim because the limitation would read

12 on any flexure member, sinusoidal or non-sinusoidal.

13    It is also inconsistent with the prosecution history.  The applicants expressly

14 distinguished the claims from certain prior art (including the asserted Wijay and Fischell

15 references) precisely because the prior art did not disclose a non-sinusoidal flexure member.

16 ('037 Pros. Hist. at MDT_1038204-05, MDT_1038230, Malaney Decl. Exs. 14-15.)  The

17 examiner and the applicants specifically discussed Wijay, which the examiner summarized as

18 follows:  "the applicants' Attorneys contended that the prior art of reference does not disclose a

19 flexure member being non-sinusoidal, arcuate and isolated to at least one adjacent

20 circumferential portion."  (*Id.* at MDT_1038230, emphasis added; Malaney Decl. Ex. 15; *see*

21 *also* '037 Pros. Hist. at MDT_1038175-77, referencing Wijay and MDT_1038301, referencing

22 Fischell; Malaney Decl. Exs. 16, 18.)  To read the claims now to cover sinusoidal structures, in

23 addition to being contrary to common sense, would ignore this prosecution history.  Defendants'

24 position is thus directly contrary to the intrinsic evidence in the prosecution history of the '037

25 patent – and the examiner's conclusion that the prior art of reference, including Wijay and

26 Fischell, failed to disclose the claimed inventions.  ('037 Pros. Hist. at MDT_1038292; Malaney

27 Ex. 17.)

28

14

1    When the claim is properly interpreted in accordance with its plain language to exclude

2  sinusoidal structures, something that this Court can do as a matter of law, the Defendants

3  anticipation defense vanishes.  There can be no material dispute of fact that the asserted

4  references all have sinusoidal flexure members.  The Plaintiffs are thus entitled to summary

5  judgment of no anticipation of the '037 patent.

6    **C.    The Fischell Patents Cannot Anticipate.**

7    The Defendants contend that the Fischell '442 patent (when combined with the Fischell

8  '312 patent) anticipates the asserted claims of the '037 and the '255 patents.  Once again, the

9  Defendants ask the Court to find that two separate patent examiners allowed claims that are

10 anticipated by prior art that the examiners had studied and considered.  The Defendants cannot

11 carry their "especially difficult" burden.  The Fischell '442 patent cannot anticipate because:

12
      •    Neither it nor the Fischell '312 patent discloses a non-sinusoidal flexure member
13         as required by the claims of the '037 patent; and

14
      •    The Fischell '442 patent itself does not disclose the structure of an unexpanded
15         stent (*e.g.*, whether it would have a "peak to valley" configuration) as required by
           the '037 and '255 patents, and it is impermissible to combine the Fischell '442
16         and '312 patents together as part of an anticipation determination.

17    **1.    The Fischell patents cannot anticipate the '037 patent because they
              have sinusoidal structures.**

18    The Fischell patents suffer the same defect as all the Defendants' asserted prior art:  any

19 flexure members are S-shaped.  They are not "non-sinusoidal" as required by the '037 patent

20 claims or "U-shaped" as required by claim 17 of the '037 patent.  Therefore, the Fischell '442

21 and '312 patents cannot anticipate the '037 patent claims.

22    **2.    The Fischell '442 patent cannot anticipate the claims of the '037 or
              '255 patents because it does not disclose the structure of an
23            unexpanded stent.**

24    Besides lacking the non-sinusoidal limitation, the Fischell '442 patent also fails to

25 disclose the structure of an unexpanded stent, as required by each claim in the patents-in-suit.

26 The Fischell '442 patent does not disclose what the stent described in the patent would look like

27 in its unexpanded state.  The Fischell '442 patent does not even say whether the unexpanded

28 stent would have "peak-to-valley" connectors or whether the unexpanded structure of the

15

1   circumferential rings would be "undulating."  The Fischell '442 patent is completely silent on

2   these points.

3       The Defendants acknowledge this failing.  (Taylor Rpt. I at 12-13; Malaney Decl. Ex 3.)

4   To attempt to cure this defect, the Defendants argue that the contents of the Fischell '312 patent

5   was "incorporated by reference" into the Fischell '442 patent.  The Defendants are wrong.

6       A combination of two references can anticipate only if one reference "expressly

7   incorporates a particular part" of another reference.  *In re Saunders*, 444 F.2d 599, 602 (C.C.P.A.

8   1971).  "Incorporation by reference provides a method for integrating material from various

9   documents into a host document . . . . by citing such material in a manner that makes clear that

10  the material is effectively part of the host document as if it were explicitly contained therein."

11  *Advanced Display Sys., Inc. v. Kent St. Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000).

12      Mere reference to another patent application is not incorporation by reference.  *See In re

13  De Seversky*, 474 F.2d 671, 674 (C.C.P.A. 1973).  Instead, the "host document," here the Fischell

14  '442 patent, must identify with <u>detailed particularity</u> what <u>specific material</u> it incorporates and

15  clearly indicate where that material is found.  *Advanced Display Sys.*, 212 F.3d at 1282 (citations

16  omitted) (emphasis added).

17      Whether and to what extent material has been incorporated by reference into a host

18  document is a question of law.  *Id.* at 1283 (emphasis added).  "[T]he court's role is to determine

19  what material in addition to the host document constitutes the single reference."  *Id.* (reversing a

20  district court that referred the question of what material was incorporated by reference to the

21  jury).  As such, this issue is ripe for summary judgment determination.

22      The language upon which the Defendants rely for their incorporation by reference

23  argument is insufficient as a matter of law:

24          FIG. 1 illustrates a stent 10 laid out into a flat, two-dimensional
            form.   In fact, the stent 10 is in the form of a thin-walled,

25          cylindrical mesh having a plurality of rings 11, **two or more
            longitudinals 12 having undulating structures 12A** to enhance

26          the longitudinal flexibility of the stent 10.  **The design advantages
            of this type of stent structure is described in U.S. patent**

27          **application Ser. No. 08/202,128 entitled "Stent Having A
            Multiplicity of Closed Circular Structures" which application**

28          **is included herein by reference.**

16

1  (Fischell '442 patent, col.2 ll.38-47, emphasis added; Malaney Decl. Ex. 10.)

2        This reference, to the unspecified "design advantages" of a stent with "undulating"

3  structures in its longitudinals, does not tell one of ordinary skill in the art what is being

4  incorporated – and it certainly does not even suggest that what is being incorporated is a

5  discussion of longitudinals with structures that are _not_ "undulating" (that is, non-sinusoidal).  It

6  does not suggest where in the Fischell '312 patent application a person of ordinary skill in the art

7  should look for the incorporated material.  In short, it does not "identify with detailed

8  particularity what specific material it incorporates and clearly indicate where that material is

9  found."  *Advanced Display Sys.*, 212 F.3d at 1282.  Thus, the Fischell '442 patent did not

10  effectively incorporate any specific description of flexure members from the Fischell '312 patent

11  application.  Because the Fischell '442 patent and the Fischell '312 patent are thus two separate

12  references, they cannot be combined to anticipate the patents-in-suit.  *Cont'l Can Co. v.*

13  *Monsanto Co.*, 948 F.2d 1264, 1269 (Fed. Cir. 1991).

14     **D.    Wijay Cannot Anticipate.**

15          **1.    Any flexure members shown in the Wijay '940 patent are sinusoidal and not U-shaped.**

16        As noted above, the Wijay '940 patent is also missing at least the non-sinusoidal flexure

17  member.  This is apparent from Figures 2 and 2A of the Wijay patent.  (Malaney Decl. Ex. 12.)[6]

18        The Defendants contend otherwise for the same nonsensical reason:  they contend all S-

19  shapes include U-shapes.  This argument should be rejected for the same reasons.

20          **2.    Wijay does not "teach" a non-sinusoidal flexure member or a flexure member that is arranged as in the claims.**

21        The Defendants also contend that, even if Figures 2 and 2A of Wijay do not show a non-

22  sinusoidal member, the Wijay patent nonetheless teaches such a structure.  (Taylor Rpt. I at 60-

23  61, 63; Malaney Decl. Ex. 3.)  The Defendants point to language in the Wijay '940 patent that

24  describes the "crossties" (*i.e.,* the longitudinal structure connecting the circumferential members)

25  ────────────

26      [6] Likewise, the Wijay '940 patent does not disclose a "U-shape," a claim limitation found in claim 17 of the '037 Patent, or an arcuate U-shape curving in a non-radial direction of the stent as in claims 11-13 and 15-16 of the '255 patent.  Wijay also lacks a flexure member that has two straight strut portions that are substantially orthogonal to the longitudinal axis of the stent, as required by claim 43 of the '037 patent and its dependent claims.  (*Id.*)

27

28

17

1   seen in completely different figures (Figures 19 and 20) as optionally having one or more bends.

2   (*Id.* at 60-61; Wijay '940 patent col.8 ll.32-33, 55-57; Malaney Decl. Ex. 12.)  Wijay's Figures

3   19 and 20 bear virtually no resemblance to the structure claimed in the claims of the '037 patent.

4   They depict stent designs that are not even in the form of a "tubular" wall, that do not have a

5   "cylindrical" surface, that do not have undulating circumferential elements, and that lack any

6   "flexure members" whatever.  (*Id.*)  Thus, it is improper to apply statements about the Figure 19

7   and 20 embodiments to the very different designs of Figures 2 and 2A.

8         Even assuming, for the sake of this summary judgment motion only, that one could take

9   the language that describes a totally inapposite embodiment in Wijay (Figs. 19 and 20) and apply

10   it to another (*e.g.*, Wijay Fig. 2A), Wijay still would not anticipate.  To anticipate, a reference

11   must either expressly or inherently meet the language of the claim.  *See Transclean Corp.*, 290

12   F.3d at 1370.  There can be no doubt that the "one or more bends" language does not *expressly*

13   teach that the bends should be "non-sinusoidal" and "arcuate," that they should be connected on

14   one or both sides to a "straight strut portion" that is "disposed parallel to the stent's longitudinal

15   axis," that they should be "U-shaped" or that the U shape should have two legs that run

16   "substantially orthogonal" to the stent's longitudinal axis.  These elements are <u>required</u> by the

17   asserted claims of the patents-in-suit.

18         For example, '037 patent claim 1 and its dependent claims require that the flexure

19   member is connected to an adjacent circumferential by a straight strut portion which is disposed

20   parallel to the longitudinal axis of the stent; and '037 patent claim 22 and '255 patent claim 11

21   require that the flexure member be "interposed between a pair of straight strut portions which are

22   disposed parallel to a longitudinal axis of the stent."  The Wijay reference nowhere depicts what

23   a "cross tie" with a single bend would look like and does not <u>expressly</u> state that a "cross tie"

24   with only a single bend would have those specific connections.

25         As another example, claim 43 of the '037 patent and its dependent claims require that the

26   flexure member comprise a pair of substantially straight portions that run orthogonal to the axis

27   of the stent, and that those straight portions be connected by a curved portion (such a flexure

28

1   member is depicted in the bottom half of Fig. 12g of the '037 patent).  Nowhere does the Wijay

2   patent mention this shape for the "one or more bends" in the cross ties.

3       Nor does Wijay <u>inherently</u> meet the limitations of the patents-in-suit.  "<u>Inherent</u>

4   <u>anticipation requires that the missing descriptive material is 'necessarily present,' not merely</u>

5   <u>probably or possibly present</u>, in the prior art."  *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d

6   1292, 1295 (Fed. Cir. 2002) (emphasis added).  There are many possible shapes that could be

7   created from "one or more bends" and many ways those bends can be connected to the

8   circumferential members that would not result in the configurations required by the '037 patent

9   claims.  (Wijay '940 patent; Malaney Decl. Ex 12.)  The Wijay reference does not "necessarily"

10  meet the required claim limitations.  Therefore, Wijay cannot anticipate the '037 patent.

11          **3.    Wijay does not disclose a flexure member "interposed" between a**
                     **pair of straight strut portions.**
12

13      Claim 11 of the '255 patent and claim 22 of the '037 patent require that each of said

14  plurality of "longitudinal portions" that connect a "peak" with a "valley" have a flexure member

15  "interposed between <u>a pair</u> of straight strut portions which are disposed parallel to the

16  longitudinal axis of the stent." (Malaney Decl. Exs. 1-2, emphasis added.)  The Wijay reference

17  does not disclose this.

18      The Defendants argue that Wijay meets this limitation because there is a straight portion

19  *somewhere* on either side of the alleged flexure member.  The figure below from Professor

20  Taylor's report illustrates the issue.

21      For any given longitudinal portion

22  (the part between the peak and the valley),

23  Wijay had at most <u>one</u> straight strut portion

24  parallel to the longitudinal axis of the stent

25  (the top one identified here).  Accordingly,

26  Wijay does not disclose any "longitudinal

27  portion"   having   a   flexure   member

28  <u>interposed between two</u> straight strut portions, as required by the claims.



19

1       Here Taylor highlights struts from two <u>separate</u> longitudinal portions.  The second

2   (lower) "straight strut portion" is in a <u>different</u> "longitudinal portion" than the "flexure member."

3   According to the Defendants, if one can find a straight structure <u>anywhere</u> on both sides of the

4   flexure member, then it is "interposed between" them.  But this renders the "each of said

5   plurality of longitudinal portions having" and "interposed between" completely meaningless.

6       When the language is viewed in context, it is clear that the straight strut portions must be

7   part of the <u>same longitudinal</u> as the flexure member:  the longitudinal portion connecting a peak

8   to a valley must "have a flexure member interposed between a pair of straight strut portions."

9   ('255 patent claim 11 and '037 patent claim 22; Malaney Decl. Ex. 1-2.)  Thus, the interpretation

10  the Defendants are giving to the claims is at odds with the plain language of the claims.  When

11  the claims are properly interpreted, it is clear that Wijay cannot anticipate claim 22 of the '037

12  patent or claim 11 of the '255 patent.

13      **E.      There Is No Dispute of Material Fact That the Secret Fischell Designs Lack
                Non-Sinusoidal Flexure Members and Are Not Prior Art Because They Were
14              Abandoned, Suppressed and Concealed.**

15      The Defendants also rely on some work by the Fischells and their company, IsoStent, that

16  was not the subject of a patent application, as prior art in this litigation.  (Taylor Rpt. I at 87-89,

17  101 and Exs. 19, 21; Malaney Decl. Exs. 3, 37-38.)  These designs, like the other designs relied

18  on by the Defendants, do not show a non-sinusoidal flexure member.

19      Moreover, the undisputed facts show that these designs have been abandoned, suppressed

20  and concealed.  This work thus cannot be prior art under 35 U.S.C. § 102(g)(2), which provides:

21  "A person shall be entitled to a patent unless – . . . before such person's invention thereof, the

22  invention was made in this country by another inventor <u>who had not abandoned, suppressed, or</u>

23  <u>concealed it</u>."  35 U.S.C. § 102(g)(2) (emphasis supplied).

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16         Because 35 U.S.C. § 102(g) expressly bars reliance on prior inventions that were

17   "abandoned, suppressed or concealed" to invalidate a patent (as discussed in section V below)

18   the abandonment, suppression and concealment of the Fischell designs is fatal to this aspect of

19   the Defendants' attempted anticipation defense.  *Flex-Rest, L.L.C. v. Steelcase, Inc.*, 455 F.3d

20   1351, 1358 (Fed. Cir. 2006) ("Intentional suppression occurs when an inventor 'designedly, and

21   with the view of applying it indefinitely and exclusively for his own profit, withholds his

22   invention from the public.'").  The Plaintiffs are entitled to summary judgment that the Fischell

23   designs do not anticipate any of the asserted claims of the patents-in-suit.

24   **V.      THE SECRET INTERNAL WORK RELIED ON BY THE DEFENDANTS IS NOT
             PRIOR ART AND SHOULD NOT BE ADMITTED FOR ANY PURPOSE.**
25
             The Defendants attempt to rely on internal work that was suppressed and concealed from
26
     the public and was ultimately abandoned as supposed proof that the patents-in-suit are obvious.
27
     This evidence is irrelevant as a matter of law.
28

                                                    21

1    The Defendants point to five instances of such secret internal work – the work of

2    (1) Brian Brown, (2) Timothy Limon, (3) Dan Cox, (4) Matthew Birdsall, and (5) the Fischells –

3    the centerpiece of their argument that the patents-in-suit are obvious.  As referenced above, they

4    also attempt to rely on the secret work of the Fischells as part of their anticipation defense.

5    Because Defendants are relying on internal work, rather than a patent or a printed publication,

6    the only provision of § 102 that this work could possibly fit under would be § 102(g)(2), which

7    provides:  "A person shall be entitled to a patent unless . . . before such person's invention

8    thereof, the invention was made in this country by another inventor <u>who had not abandoned,</u>

9    <u>suppressed, or concealed it</u>."  35 U.S.C. § 102(g)(2) (2006) (emphasis supplied).

10    There is no dispute of material fact that the internal work Defendants rely on was

11    suppressed and concealed.  It never saw the light of day:  it was not published, it was not sold,

12    and it was never publicly disclosed.  Each of these designs was also abandoned, none of these

13    designs has been worked on in over a decade.  Such abandoned, suppressed and concealed

14    internal work cannot be used as evidence of obviousness.

15    **A.    The Secret Internal Work Is Not Prior Art.**

16    Under 35 U.S.C. § 102, an invention exists only if the challenger shows, among other

17    things, that the asserted prior invention was reduced to practice.  An actual reduction to practice

18    requires that there be "a physical embodiment which includes all limitations of the claim."  *UMC*

19    *Elecs. Co. v. United States*, 816 F.2d 647, 652 (Fed. Cir. 1987).

20    An invention is legally abandoned, suppressed or concealed if:  (1) "an inventor actively

21    abandons, suppresses, or conceals his invention from the public," or (2) there is an "unreasonable

22    delay in making the invention publicly known."  *Dow Chem. Co. v. Astro-Valcour, Inc.*, 267

23    F.3d 1334, 1342 (Fed. Cir. 2001).  The case law recognizes two types of abandonment,

24    suppression or concealment:  active suppression or concealment and a legal inference of

25    abandonment, suppression, or concealment.  *Id.*

26    "Intentional suppression occurs when an inventor 'designedly, and with the view of

27    applying it indefinitely and exclusively for his own profit, withholds his invention from the

28    public.'"  *Flex-Rest*, 455 F.3d at 1358.  The case law treats suppression and concealment under a

22

1  common standard.  *See, e.g.*, *Apotex*, 254 F.3d at 1038.  Intentional "[a]bandonment means that

2  the original inventor has voluntarily terminated any effort to exploit the invention."  *Oak Indus.,*

3  *Inc. v. Zenith Elecs. Corp.*, 726 F. Supp. 1525, 1533 (N.D. Ill. 1989).

4      The Defendants cannot meet their burden of proof to show that any of the five designs of

5  the internal work are prior inventions or that these designs were not abandoned, suppressed and

6  concealed.  None of this internal work can serve as a basis for invalidating any of the '037 or

7  '255 claims.

        **1.**    **Mr. Brown's sketches are not prior art because the designs were**
8              **never made and they were abandoned, suppressed and concealed.**

9      The Defendants rely on drawings in the lab notebook of a Mr. Brian Brown, an employee

10  of BSC, as evidence of obviousness.  However, the evidence shows that the designs in these

11  sketches – which appear on four pages of Mr. Brown's notebook from late 1995 and early 1996 –

12  were never made and lay collecting dust in Mr. Brown's "highly confidential" notebooks until

13  BSC exhumed them for litigation.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2. **Mr. Limon's designs did not work, and they were abandoned,
suppressed and concealed.**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

1

2

3

4      **3.      The Defendants cannot meet their burden with respect to Mr. Cox's designs.**

5          There is nothing in the record showing that Mr. Cox's designs are prior art. All that

6   exists in the record are a few pages from what is purported to be Mr. Cox's old lab notebook.

7   (Taylor Rpt. I Ex. 37; Malaney Decl. Ex. 26.)  And even these documents have never been

8   authenticated.  Based on this record, that the Defendants cannot establish these designs are an

9   invention and can point to no evidence to rebut the legal inference that these designs were

10  abandoned, suppressed and concealed.

11     **4.      Mr. Birdsall's design was abandoned, suppressed and concealed.**

12         The Defendants also rely on a single page from Matthew Birdsall's lab notebook.

13  (Birdsall Dep. Ex. 5 at MDT_1361809; Malaney Decl. Ex. 27.)  However, the Defendants can

14  point to nothing to show by clear and convincing evidence that this drawing is a prior invention.

15

16

17

18

19

20

21

22

23

24     **5.      The Fischells abandoned, suppressed and concealed their designs.**

25         The Defendants rely on the confidential stent designs created by the Fischells as part of

26  both their anticipation and obviousness defenses.  (Taylor Rpt. I at 87-89, 101; Malaney Decl.

27  Ex. 3.)  As discussed above in section IV,E, the Fischells' work was abandoned, suppressed and

28  concealed.

1

**B.    Abandoned, Suppressed or Concealed Work Is Not Admissible to Show Obviousness.**

2

3       Although there can be no reasonable dispute that the secret internal work is not prior art,

4  Defendants nonetheless intend to rely on this secret work to attempt to show the obviousness of

5  the patents-in-suit. This is directly at odds with the express language of 35 U.S.C. § 103, as well

6  as the principles which underlie U.S. patent law. The Court should reject Defendants' backdoor

   attempt to rely on this non-prior art to prop up their obviousness case.

7       Section 103 prohibits issuance of a patent "if the differences between the subject matter

8  sought to be patented and the prior art are such that the subject matter as a whole would have

9  been obvious at the time the invention was made to a person having ordinary skill in the art to

10 which said subject matter pertains." 35 U.S.C. § 103(a). As part of the obviousness inquiry,

11 "the scope and content of the prior art are to be determined; differences between the prior art and

12 the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art

13 resolved." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966). Against this

14 background, the jury then determines whether the challenger has established, by clear and

15 convincing evidence, that the subject matter would have been obvious to a person of ordinary

16 skill in the art at the time of the invention. *Id.* "Such secondary considerations as commercial

17 success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the

18 circumstances surrounding the origin of the subject matter sought to be patented." *Id.* at 17-18.

19     **1.    The internal work cannot be part of the scope and content of the prior art under § 103.**

20

21     The secret internal work is not prior art under § 102(g); therefore, it cannot be used to

22 invalidate the claims of the patents-in-suit for obviousness under § 103. The internal work may

23 be prior art for purposes of § 103 only if it meets the requirements of § 102(g). *E.I. Du Pont de*

24 *Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1437 (Fed. Cir. 1988). As

25 demonstrated above, the secret internal work is not § 102(g) prior art because it was abandoned,

26 suppressed or concealed. Because it does not qualify as prior art under any subsection of § 102,

27 the internal work cannot be used as part of the "scope and content of the prior art" to determine

28 obviousness under § 103.

26

## 2.     The internal work is not admissible under any other rationale to establish obviousness.

Though the abandoned and secret internal work is indisputably not prior art, the Defendants have nonetheless attempted to rely on this secret work to show obviousness. The Defendants appear to argue that the secret work is relevant either because it shows what one of ordinary skill in the art would know or because it is a relevant "secondary consideration" tending to show obviousness.[7]  Neither of these arguments has merit.

Congress has decided that even if a prior inventor invented precisely the same invention later claimed by the inventor of an issued patent, the later inventor is entitled to a patent if the prior inventor "abandoned, suppressed, or concealed" that prior invention.  35 U.S.C. § 102(g)(2).  Congress certainly could have drawn the balance differently if it had chosen to do so, but it chose to award patent protection to those who first brought the benefits of an invention to the public.

Consistent with these principles, suppressed and concealed material cannot be used to invalidate a patent under § 103.  "The same reasons of public policy which forbid prior suppressed and concealed activities from invalidating a patent under 35 U.S.C. § 102(g) are also applicable to 35 U.S.C. § 103."  *Grinnell Corp. v. Va. Elec. & Power Co.*, 277 F. Supp. 507, 518 (E.D. Va. 1967).  The fundamental purpose of section 102(g) is to induce the prompt disclosure of an inventive idea and discourage concealment.  *Id.*  "If the same acts of concealment were permitted to invalidate a patent under § 103, the constitutional basis of a grant of a patent monopoly would be subverted.  Concealment would be encouraged and the intent of Congress to encourage disclosure would be set at nought."  *Id.* at 519.

Yet Defendants in this case are seeking to have the jury declare the '037 and '255 patents invalid based on allegedly similar stent designs that were all abandoned, suppressed and

---

[7] While Defendants may argue this, their expert's report demonstrates that Defendants intend to try to convince the jury that these suppressed and concealed designs should be treated just like any other "prior art."  (*See, e.g.,* Taylor Rpt. I at 73-76 (opining that the Fischell designs anticipate); 77 (opining that the Fischell, and Birdsall notebook entries are part of "the scope and content of the prior art"); and 80-81 (relying on the Brown and Limon drawings as if they were prior art); Malaney Decl. Ex. 3.)

27

1   concealed.  While there may be some basis for considering such evidence if it became publicly

2   accessible, it would contravene the intent of Congress to permit reliance on such evidence where

3   – as here – it never reached the public and was in fact actively concealed.

4          When the art is secret and abandoned, it cannot be evidence of what those skilled in the

5   art were thinking.  The person of skill in the are is presumed to know the pertinent prior art.  *See*

6   *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986).  The

7   hypothetical person is only presumed to "have that ability to select and utilize knowledge from

8   other arts reasonably pertinent to his particular problem which would be expected of a man of

9   ordinary skill in the art to which the subject matter pertains."  *In re Antle*, 444 F.2d 1168, 1171-

10  72 (C.C.P.A. 1971).  It would render meaningless the notion of the person of ordinary skill in the

11  art to impute to that person knowledge about non-prior art that has been abandoned, suppressed

12  and concealed.  "[W]hen the possessor of secret art (art that has been abandoned, suppressed, or

13  concealed) that predates the critical date is faced with a later-filed patent, the later-filed patent

14  should not be invalidated in the face of this 'prior' art, which has not been made available to the

15  public."  *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1402 (Fed. Cir. 1997).  Such

16  secret prior art should not be admissible to show obviousness.

17         Plaintiffs have found no Federal Circuit case in which non-prior art work that was

18  abandoned, suppressed and concealed was used as evidence of obviousness.  The plaintiffs have

19  located two cases that have touched on the issue.  In one case, *International Glass Co. v. United*

20  *States*, 408 F.2d 395 (Ct. Cl. 1969), the U.S. Court of Claims adopted a decision of the United

21  States Claims Court (trial division) that relied on evidence of "near simultaneous invention" as

22  evidence of the level of ordinary skill in the art.  *Id.* at 405.[8]  The trial court had found that the

23  "near simultaneous invention" did not qualify as prior art because it had been abandoned,

24  suppressed or concealed.  However, *International Glass* did not discuss whether 35 U.S.C.

25  § 102(g) should bar the use abandoned, suppressed or concealed information to establish

26  obviousness.

---

27         [8]The decisions of the Court of Claims have been adopted as precedent by the Federal
    Circuit.  *See S. Corp. v. United States*, 690 F.2d 1368, 1371 (Fed. Cir. 1982) (*en banc*).

28

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 06-01066-PJH

The only case located by the Plaintiffs that squarely addresses this statutory issue found that it is contrary to public policy to admit as evidence work that had been abandoned, suppressed or concealed to support an obviousness attack. *Grinnell*, 277 F. Supp. at 518.  The Court there specifically distinguished cases that had permitted the introduction of non-prior art as evidence of obviousness.  In *Grinnell*, the work was concealed.  In the cases distinguished by the Court, "the prior work did not receive the degree of publicity necessary to constitute prior art. *But it was not concealed*; on the contrary it was widely circulated."  *Id.* at 519 (emphasis added). The Court thus found that "no weight" should be given the concealed work.  *Id.*

Because the abandoned internal work does not tend to show obviousness and because reliance on it would be contrary to the statute and to the intent of Congress in enacting § 102(g), this evidence is not admissible for purposes of attacking the validity of the claims of the patents in suit.

## VI.   SUMMARY JUDGMENT IS APPROPRIATE ON THE DERIVATION DEFENSE BECAUSE DEFENDANTS CANNOT MEET THEIR BURDEN TO PROVE COMMUNICATION OF THE FISCHELL DESIGNS TO DRS. PENN OR RICCI.

The Defendants' case on derivation will be simply to lay two drawings alongside one another, a Fischell drawing and a Penn and Ricci patent figure, and argue that Mr. Shukov had access to the <u>former</u>, proving that the <u>latter</u> must have been based on and derived from it – all in the face of express denials by Mr. Shukov and Drs. Penn and Ricci.  The issue for the Court on summary judgment is whether this is sufficient evidence from which a reasonable jury could find in favor of the Defendants under the applicable clear and convincing standard of proof.  Because it is not, summary judgment is appropriate.

The derivation defense is founded on 35 U.S.C. § 102(f), which provides that a person is entitled to a patent unless "he did not himself invent the subject matter sought to be patented. . . ."  35 U.S.C. § 102(f) (2006).  To prevail on a claim of derivation, Defendants must prove by clear and convincing evidence both (1) a prior conception of the claimed subject matter by another, and (2) communication to the patentee by that other person.  *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1578 (Fed. Cir. 1997).  The evidence must establish that the complete invention was communicated.  *Id.* at 1577-78 (reversing lower court that relied

29

1   on incorrect standard, suggesting that only some portion of invention had to be communicated).

2   Moreover, the communication of the complete invention or claimed subject matter must be

3   sufficient to "enable[] an ordinary mechanic, without the exercise of any ingenuity and special

4   skill on his part, to construct and put the improvement in successful operation." *Id.* at 1577.

5   Significantly, "[c]ommunication of the prior conception to the patentee cannot be presumed but

6   must be established by clear and convincing evidence." *Maxwell v. K. Mart Corp.*, 880 F. Supp.

7   1323, 1333 (D. Minn. 1995).  The law is clear that corroboration is required to support an

8   allegation of communication. *Price v. Symsek*, 988 F.2d 1187, 1196 (Fed. Cir. 1993). "Mere

9   proof of motive and opportunity (*e.g.*, access) is not sufficient to carry the burden of proving

10  derivation." *Maxwell*, 880 F. Supp. at 1333 (citing *Hedgewick v. Akers*, 497 F.2d 905, 908

11  (C.C.P.A. 1974)).

12          Relying on some of the same tired allegations already rejected in the IsoStent litigation,

13  the Defendants allege that the patents-in-suit are invalid under § 102(f) because they were

14  derived from the work of the Fischells and their company, IsoStent. (*See* Second Am. Answer

15  and Countercls. at ¶¶ 57-58, 96-97; Dkt. # 180-2; First Am. Compl.-in-Intervention at ¶ 32; Dkt.

16  # 168.)  The Defendants assert – as did the Fischells in a prior litigation – that Mr. Shukov must

17  have passed information about certain confidential Fischell designs to Drs. Penn and Ricci.  They

18  base their allegation on the similarity of two drawings and their claim that Mr. Shukov, cutting

19  stents for many companies at the time, including the Fischells and Drs. Penn and Ricci, had

20  access to the Fischell designs that, they claim, are similar to designs in the Penn and Ricci

21  patents.  While a clever story (already rejected by another court applying a lower burden of

22  proof[9]), this rank speculation is not evidence, or sufficient to create a material issue of fact

23  sufficient to preserve Defendants' derivation defense.

24

25          [9] In that case, IsoStent alleged misappropriation of trade secrets, among other things,
    relating to the same IsoStent designs at issue in this litigation.  Ultimately, the Court, sitting in
    equity, ruled that there was no theft of trade secrets by the doctors:

26

27                  Looking at the design elements, I do not believe by a
                    preponderance of the evidence that IsoStent demonstrated that
                    these elements were appropriated from IsoStent.  There is elements
28                  that are -- did certainly evolve, but there is certain things like

                                        30

1      <u>First</u>, there no evidence of any communication.  There is no documentary or testimonial

2    evidence corroborating Defendants' claim that any Fischell designs were communicated to Drs.

3    Penn or Ricci.  There is no testimony from Mr. Shukov or Drs. Penn or Ricci that information

4    regarding the Fischell designs was ever communicated to them.  Just the opposite.  Dr. Ricci said

5    that Mr. Shukov <u>never</u> communicated proprietary information that he learned from another

6    company and never showed him proprietary stents or designs owned by another company.

7    (Ricci 30(b)(6) Dep. 49:18-21, 51:16-21, 51:23-54:19; Malaney Decl. Ex. 6.)  Mr. Shukov also

8    testified that he never communicated confidential information about one customer's designs to

9    another customer. (Shukov Dep. 93:2-95:16, Feb. 9, 2004; Malaney Decl. Ex. 7.)  He testified

10   that he never disclosed confidential information of another company to Dr. Ricci, and

11   specifically that neither he nor anyone else at LPL ever disclosed the IsoStent designs to the

12   doctors. (<i>Id.</i> at 161:20-162:9.)  Mr. Shukov's partner, Rich Press, also testified that he did not

13   communicate confidential designs of one customer to another.  (Press Dep. 80:7-81:3, 82:25-

14   86:6, Dec. 12, 2003; Malaney Decl. Ex. 30.)

15      Even the Fischells' testimony provides no support for the Defendants' contentions.

16   Robert Fischell testified that he did not know whether information about IsoStent designs was

17   ever communicated to Drs. Penn or Ricci.  (R. Fischell Dep. 121:25-122:25, 125:4-16; Malaney

18   Decl. Ex. 20.)  Tim Fischell testified that he had no first-hand knowledge that information was

19   communicated to Drs. Penn or Ricci.  (T. Fischell Dep. 53:7-18; Malaney Decl. Ex. 21.)

20   Likewise, David Fischell testified that he had no personal knowledge of IsoStent designs being

21   shown to Drs. Penn or Ricci and no personal knowledge that LPL or Mr. Shukov communicated

22

23

---

24         pulling this 'S' out of the valley out of the arrowhead that quite
       frankly Divysio did first according to the evidence that I
25       demonstrated -- that was demonstrated to me. This indicates to me
       that there was a fresh look at the design. It was not copied. There
26       was not a theft of IsoStent's design, so that is my finding, so I'm
       going to deny the motion for equitable relief ...
27

28   (Nov. 18, 2004 IsoStent Hr'g Tr. at 39-41; Malaney Decl. Ex. 29.)

31

1  information about IsoStent designs to Drs. Penn or Ricci.  (D. Fischell Dep. 161:6-165:4;

2  Malaney Decl. Ex. 19.)

3         The lack of testimonial support for the allegation that a third party passed information

4  from one inventor to another puts this case on all fours with *Maxwell*, 880 F. Supp. at 1333.  In

5  *Maxwell*, the Court considered allegations of communication of derivation relying on a prototype

6  and allegations that third parties Shapiro and Hasek had communicated a prior conception by Mr.

7  Yeh to Ms. Maxwell.  *Id.*  Shapiro and Hasek's testimony did not confirm Yeh's allegations.

8  Neither testified that they had communicated the invention to Maxwell.  *Id.*  And Maxwell

9  denied learning of the invention from these communications.  *Id.*  On this evidence the Court

10 granted summary judgment in favor of Maxwell – noting the absence of evidence of

11 communication.  *Id.*

12        Summary judgment is equally appropriate in this case because here, as in *Maxwell*, the

13 Defendants can point to no testimony supporting their allegations – and therefore cannot show by

14 clear and convincing evidence, or at all, that Mr. Shukov communicated anything about the

15 Fischells' stent designs to Drs. Penn and Ricci.  Mere proof of access (assuming Defendants

16 could even prove that, which they cannot) is not sufficient as a matter of law.  *Id.* (citing

17 *Hedgewick*, 497 F.2d at 908.)

18        Second, in every case of derivation there exists two inventions which are claimed to be

19 similar.  Defendants, however, have to prove more than similarity – they must prove that any

20 prior conception was identical to the claimed invention, here the asserted claims of the '037 and

21 '255 patents, and that this complete invention was communicated to the patentees.  *See Gambro*,

22 110 F.3d at 1577-78 (reversing court relying on incorrect standard suggesting that only a portion

23 of invention had to be communicated).  Moreover, Defendants have to prove that a completed

24 conception of the claimed invention was communicated to the inventors in a manner sufficient to

25 enable one of ordinary skill in the art to construct and successfully operate the invention.  *Id.; see*

26 *also Carpet Seaming Tape Licensing Corp. v. Best Seam, Inc.*, 694 F.2d 570 (9th Cir. 1982)

27 (reversing a trial court determination on derivation where third party, Walter, did not recall

28 seeing the complete invention and did not acknowledge communicating it to Burgess).

1    Here, not only is there a complete lack of testimonial support for the allegation of

2    communication, even if communication could be proven:  (a) there is no evidence establishing

3    prior conception by the Fischells of each of the asserted claims of the patents in suit[10]; (b) there

4    is no evidence establishing that any communication was of the complete, claimed invention; and

5    (c) there is no evidence establishing that any communication was enabling.

6    The Defendants simply cannot sustain their burden to prove, by clear and convincing

7    evidence, that the patents-in-suit are invalid under § 102(f).

8    **VII.    SUMMARY JUDGMENT IS APPROPRIATE ON BSC'S LICENSE DEFENSE
           BECAUSE BSC HAS NO RIGHTS THAT BAR PLAINTIFFS FROM ALLEGING**
9    **THAT BSC HAS INFRINGED THE PENN AND RICCI PATENTS.**

10    Apparently as an alternative to alleging that Mr. Shukov stole the claimed inventions

11    from the Fischells and passed them to Drs. Penn and Ricci, BSC will take the position that Mr.

12    Shukov or his colleague derived the claimed subject matter from their work for <u>BSC</u>.  As a result

13    of an old agreement between BSC and Mr. Shukov, BSC alleges that it "has rights, including

14    license rights under the [Penn and Ricci patents] that bar the Plaintiffs from alleging

15    infringement against them (sic)."  (First Am. Compl.-in-Intervention ¶ 27; Dkt. # 168.)

16    BSC's allegation is based on its November 14, 1995 Consulting Agreement with Messrs.

17    Shukov and Press, then employed by LPL.  (BSC's Resp. to Medtronic Pls.' Third Set of

18    Interrogs. (Nos. 7-10) at 4-5 and Simso 30(b)(6) Dep. 150:21-157:21; Malaney Decl. Exs. 31-

19    32.)  The issue for the Court on summary judgment is whether this Agreement bars Plaintiffs

20    from alleging infringement against BSC.  Because it does not, summary judgment is appropriate.

21    <u>First</u>, as is evident from the face of the Consulting Agreement, Plaintiffs are not parties to

22    the Agreement, and BSC has pointed to no evidence to suggest that they are otherwise bound by

23    it.  As such, there is no support for BSC's claim that the Consulting Agreement gives BSC any

24

25    _____

    [10] The derivation allegation in this litigation is even more farfetched than the trade secret
    allegations of IsoStent.  There was no allegation in the IsoStent litigation that the doctors
26    misappropriated any designs that included the <u>non-sinusoidal</u> flexure members claimed in the
    '037 patent.  Defendants can point to no evidence whatsoever that the Fischells ever conceived
27    of a non-sinusoidal flexure member, much less communicated it to anyone.  (R. Fischell Dep.
    33:23-34; Malaney Decl. Ex. 20.)

28

1   rights in Plaintiffs' patents or bars Plaintiffs from doing anything.  BSC's allegations fail as a

2   matter of basic contract law.

3       Second, even if Plaintiffs were somehow bound by the Agreement, BSC's defense would

4   still fail.  The relevant provision of the Consulting Agreement, relied upon by the Defendants, is

5   Section 7(a), providing:

6           that all derivative inventions, improvements, or discoveries
            conceived or made by [Shukov and Press collectively], either alone
7           or in cooperation with others, during the term of this Agreement
            that relate to the manufacture or design of BSC's stents shall be
8           made available to BSC on a non-exclusive basis . . . .

9   (*Id.*, emphasis added; Malaney Decl. Ex. 8.)[11]  However, BSC cannot demonstrate that in

10  connection with their work for Drs. Penn and Ricci:

11      (1) Messrs. Shukov and Press, alone or with others, conceived of or made an invention,

12  improvement, or discovery that was "derivative" of a BSC invention;

13      (2) This "derivative invention, improvement or discovery" … "related to the manufacture

14  or design of BSC's stents"; or

15      (3) This derivative invention is now claimed in one or more of the asserted claims of the

16  Penn and Ricci patents.

17      BSC cannot point to sufficient evidence to create a material issue of fact on any of these

18  three issues.  Indeed, the evidence is either completely lacking or overwhelmingly to the

19  contrary.  Mr. Press testified that LPL and Mr. Shukov were selling laser cutting services and

20  that he personally did not provide any design suggestions to Drs. Penn and Ricci.  (Press Dep.

21  103:18-104:13, Sept. 21, 2007; Malaney Decl. Ex. 33.)  Mr. Press never did anything he would

22  consider to be stent design.  (*Id.* at 106:10-12.)  Likewise, Mr. Shukov testified several times that

23  he is not a stent designer and that he was not involved in the stent design done by Drs. Penn and

24  _____

25      [11] As a matter of background, the Consulting Agreement concerned services Shukov and
    Press performed for BSC:  "relating to laser cutting technology, laser cutting process
26  improvements to increase yield and/or decrease stent cutting times, optimization of the stent
    design, and other services relating to the cutting of nitinol and stainless steel tubing."
27  (Consulting Agreement § 2, Ex. A; Malaney Decl. Ex. 8.)  Shukov and Press were paid based on
    the "capacity" and the "capacity run rates" they could achieve for BSC, meaning how fast they
28  could get their machines to make BSC stents.  (*Id.* at Ex. A.)

34

Ricci.  (Shukov Dep. 181:6-14, 182:7-12, 182:21-183:6, 205:10-22, 208:12-209:5, 327:1-14, Sept. 20, 2007; Malaney Decl. Ex. 34.)  Mr. Shukov did not make suggestions regarding stent geometry and only made comments regarding the manufacturability of designs provided by Drs. Penn and Ricci.  (*Id.* at 184:6-186:22.)  Mr. Shukov testified that his suggestions related solely to manufacturability and things such as the utilization of smaller tubing to achieve a desired end product.  (*Id.* at 250:19-251:14.)  His work had "nothing to do with design."  (*Id.* at 251:7-14.)

Accordingly, BSC cannot prevail on its license defense, and summary judgment should be granted in favor of the Plaintiffs.

## VIII.   IT IS UNDISPUTED THAT THE '037 PATENT CLAIMS 1, 8-9, 12-13, 16, 20, AND 55 ARE ENTITLED TO A PRIORITY DATE OF MARCH 5, 1996.

It is undisputed that claims 1, 8-9, 12-13, 16, 20, and 55 of the '037 patent are entitled to at least a priority date of March 5, 1996.  (CA 2,171,047; Taylor Rpt. I at 47; Taylor Dep. 324:25-325:2; Malaney Decl. Exs. 35, 3, 36.)  As such, Plaintiffs are entitled to summary judgment of this priority date and no reference dated after March 5, 1996 may be considered "prior art" to any of those claims.

## CONCLUSION

For the reasons set forth herein and in any reply, and in view of the supporting declarations and arguments to be made by counsel, Plaintiffs' Motion for Summary Judgment should be granted.


DATE:  July 31, 2008                                 **FOLEY & LARDNER LLP**

                                                      By:   s/ Cynthia J. Franecki
                                                             Cynthia J. Franecki

                                                      Attorneys for Plaintiffs Medtronic
                                                      Vascular, Inc., Medtronic USA, Inc.,
                                                      Medtronic, Inc., and Medtronic Vascular
                                                      Galway, Ltd.

1

DATE:  July 31, 2008

**KATTEN MUCHIN ROSENMAN LLP**

2

By:   s/ Timothy J. Vezeau
                Timothy J. Vezeau

3

4

Attorneys for Plaintiff evYsio Medical
Devices ULC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

36