United States District Court
For the Northern District of California

1
2
3        UNITED STATES DISTRICT COURT
4        NORTHERN DISTRICT OF CALIFORNIA
5
6
7
8    MEDTRONIC VASCULAR INC.,
     et al.,
9
            Plaintiffs,                         No. C 06-1066 PJH
10
        v.                                      **ORDER GRANTING SUMMARY**
11                                              **JUDGMENT IN PART AND DENYING**
     ADVANCED CARDIOVASCULAR                    **SUMMARY JUDGMENT IN PART**
12   SYSTEMS, INC., et al.,
13          Defendants.
     _____/
14

15        The parties' cross-motions for summary judgment came on for hearing on

16   September 24, 2008 before this court.  Plaintiffs, Evysio Medical Devices ULC ("Evysio")

17   and various Medtronic entities[1] (collectively "plaintiffs" or "Medtronic"), appeared through

18   their counsel, Richard S. Florsheim, Cynthia Franecki, and Robert A. Van Nest.

19   Defendants Abbott Cardiovascular Systems, Inc., Abbott Laboratories, and Abbott

20   Vascular, Inc. ("Abbott") and intervenor Boston Scientific Corporation ("BSC" or

21   "intervenor")(collectively "defendants") appeared through their counsel Gerald F. Ivey,

22   Michael Morin, James R. Barney, Robert F. McCauley, Kurt Glitzenstein, and Frank

23   Scherkenbach.  Having read all the papers submitted and carefully considered the relevant

24   legal authority, the court hereby GRANTS the motions for summary judgment in part and

25   DENIES the motions for summary judgment in part, for the reasons stated at the hearing,

26   and as follows.

27   _____

28        [1]    The Medtronic entities include: Medtronic Vascular, Inc.; Medtornic USA, Inc.;
     Medtronic, Inc.; and Medtronic Vascular Galway, Ltd.

**United States District Court**
For the Northern District of California

**BACKGROUND**

Plaintiff Evysio is the assignee and owner of U.S. Patent Nos. 6,858,037 (the "'037 patent") and 7,094,255 (the "'255 patent"). The various Medtronic entity plaintiffs are licensees and sub-licensees of Evysio's patents.

On February 15, 2006, plaintiffs filed the instant suit against the Abbott defendants alleging infringement of the '037 and '255 patents. <u>See generally</u> Second Amended and Supplemental Complaint for Patent Infringement ("SAC"). Over one year later, on July 30, 2007, Boston Scientific Corporation ("BSC" or "intervenor") intervened in the action, seeking a declaratory judgment of non-infringement. <u>See generally</u> Complaint in Intervention.

A.   The Claims at Issue

Only certain claims of the '037 and '255 patents are at issue here. In general, these claims are directed to medical stenting devices for use in the human coronary system. Specifically, the relevant independent claims of the '037 patent are as follows:[2]

**Claim 1**: claiming an "unexpended stent comprising: a tubular wall having a series of undulating circumferential portions, each circumferential portion comprising alternative peaks and valleys; the tubular wall also having a plurality of longitudinal portions connecting said series of undulating circumferential portions to form a porous, cylindrical surface; a longitudinal portion connecting a peak in a first circumferential portion with a valley in a second circumferential portion adjacent to the first circumferential portion; and each longitudinal portion having a flexure member, said flexure member, in two dimensions, being non-sinusoidal and arcuate, each flexure member being connected to an adjacent circumferential portion with a straight strut portion which is disposed parallel to a longitudinal axis of the stent."

**Claim 22**: "An unexpended stent comprising: a tubular wall having a series of undulating circumferential portions, each circumferential portion comprising alternating peaks and valleys; the tubular wall also having a plurality of longitudinal portions connecting said series of undulating circumferential portions to form a porous, cylindrical surface; a longitudinal portion connecting a peak in a first circumferential portion with a valley in a second circumferential portion adjacent to the first circumferential portion; and each of said plurality of longitudinal portions having a flexure member that provides lateral flexibility to

---

[2]     While the claims at issue comprise both independent and dependent claims, for ease of reference, only the independent claims at issue are expressly quoted herein.

United States District Court

For the Northern District of California

said stent and is disposed within each of said plurality of longitudinal portions, each said flexure member, in tow dimensions, being (i) non-sinusoidal, (ii) interposed between a pair of straight strut portions which are disposed parallel to a longitudinal axis of the stent, and (iii) arcuate."

**Claim 43**: "An unexpanded stent comprising: a tubular wall having a series of undulating circumferential portions, each circumferential portion comprising alternating peaks and valleys; the tubular wall also having a plurality of longitudinal portions connecting said series of undulating circumferential portions to form a porous, cylindrical surface; a longitudinal portion connecting a peak in a first circumferential portion with a valley in a second circumferential portion adjacent to the first circumferential portion; and each of said plurality of longitudinal portions having a flexure member that provides lateral flexibility to said stent and is disposed within each of said plurality of longitudinal portions, each said flexure member, in two dimensions, being (i) non-sinusoidal, (ii) arcuate, and (iii) comprising a pair of substantially straight strut portions disposed substantially orthogonal to a longitudinal axis of the stent, the pair of substantially straight strut portions being interconnected by a curved portion."

The following dependent claims of the '037 patent are also at issue: claims 8, 9, 12-13, 16-17, 20, 29-30, 33-34, 40-41, 45-48, 52-53, 55-57.  See, e.g., Def. MSJ Op. Br. at v (Notice of Motion); see also Pl. MSJ Op. Br. at 2:24-26.

As for the '255 patent, the relevant independent claim states as follows:

**Claim 11**: "An unexpended stent comprising: a tubular wall having a series of undulating circumferential portions, each circumferential portion comprising alternative peaks and valleys; the tubular wall also having a plurality of longitudinal portions connecting said series of undulating circumferential portions to form a porous, cylindrical surface; a longitudinal portion connecting a peak in a first circumferential portion with a valley in a second circumferential portion adjacent to the first circumferential portion; and each of said plurality of longitudinal portions having a single flexure member interposed between a pair of straight strut portions which are disposed parallel to a longitudinal axis of the stent, the flexure member, comprises a U-shape curving in a non-radial direction of the stent."

The relevant dependent claims with respect to the '255 patent are claims 12-13, and 15-16. See id.

On November 7, 2007, the court held a hearing on the issue of claim construction. On December 21, 2007, the court issued its order construing the disputed terms in the above claims.  See generally Order Construing Claims.

3

B.     The Instant Motions

The parties have now filed cross-motions for summary judgment, addressing primarily invalidity issues.  Medtronic, for its part, moves for summary judgment as to:  (1) anticipation; (2) indefiniteness; (3) defendants' written description defense; (4) defendants' derivation defense; (5) BSC's license defense; and (6) the applicable priority date vis-a-vis the '037 Patent.  Like plaintiffs, defendants cross-move for summary judgment as to (1) anticipation; and (2) indefiniteness.  Defendants also, however, seek summary judgment as to (3) obviousness.  Thus, while both parties target some of the same invalidity grounds, the parties' arguments also differ in key respects.

In addition, both parties have filed requests to seal numerous exhibits and evidence.

**DISCUSSION**

A.     Legal Standard

Summary judgment is appropriate when the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

B.     Anticipation

Defendants' anticipation arguments are based on a prior art reference by Wijay, which defendants claim anticipates independent claims 1 and 22 of the '037 patent, and claim 11 of the '255 patent.  Medtronic's anticipation arguments not only contest this proposition, but also affirmatively seek the additional finding that certain prior art references by Fischell do *not* anticipate.

1.     Legal Standards for Anticipation

A patent is entitled to a presumption of validity, and the burden of proof falls upon the party seeking to establish the invalidity of a patent claim, who "must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence."  Nystrom v. Trex Co., 374 F.3d 1105, 1117 (Fed. Cir.2004) (quoting State Contracting & Eng'g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1067 (Fed. Cir.2003)); Metabolite Labs., Inc. v. Lab.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Corp., 370 F.3d 1354, 1365 (Fed. Cir. 2004).  Medtronic has also correctly noted that, where the PTO has considered and allowed prior art, defendants' burden in proving invalidity is all the more difficult.  See, e.g., Glaxo Group Ltd. v. Apotex, Inc., 376 F.3d 1339, 1348 (Fed. Cir. 2004)(defendant's burden "is 'especially difficult' when, as is the present case, the infringer attempts to rely on prior art that was before the patent examiner during prosecution").

For prior art to anticipate a claim, a single prior art reference must disclose every limitation of the claimed invention.  See Schering Corp., 339 F.3d at 1377.  Furthermore, such disclosure must be "enabling" – i.e., it must be sufficient to permit a person having ordinary skill in the art to practice the invention.  SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1342 (Fed. Cir. 2005).  Anticipation is a question of fact, id. at 1343, and the determination of whether a prior art reference is enabling "is a question of law based upon underlying factual findings," see Crown Operations Int'l, 289 F.3d at 1376. "However, without genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law."  SmithKline Beecham, 403 F.3d at 1343.

Thus, to prevail on its anticipation argument here, defendants must prove by "clear and convincing" evidence that all of the elements and limitations of each asserted claim are expressly or inherently found in a prior art reference.  See, e.g., Celeritas Techs. Ltd. v. Rockwell Int'l Corp., 150 F.3d 1354, 1360 (Fed. Cir. 1998).

The court now turns to the prior art in question.

2.    Wijay '940

Patent No. 6,053,940 ("Wijay '940") generally teaches a medical stent with features "to minimize recoil and facilitate anchoring of the stent in a vascular passage."  See Declaration of Robert F. McCauley ISO Def. MSJ ("McCauley MSJ Decl."), Ex. 20 at Abstract.  The patent discloses a medical stent with a rounded cross-section in the wire component, and "sharp angulated bends" that provide "additional rigidity and an anchoring mechanism."  See id.  The patent also discloses "ties" in the stent, that will allow the stent

United States District Court

For the Northern District of California

to be more flexible in accommodating bends in the vascular system.  Id. The disclosed stent is capable of being locked into an expanded position.  Id.

Defendants contend that Wijay '940 anticipates independent claim 11 and dependent claims 13, 15, and 16 of the '255 patent, and also anticipates independent claims 1 and 22 and dependent claims 8, 12-13, 15, 17, 20, 29-30, 33-34, 41, and 55-56 of the '037 patent.[3]

a.    the '255 patent

The parties dispute whether Wijay reads upon every limitation of independent claim 11 of the '255 patent, thereby anticipating it.   While defendants urge the court to answer this question in the affirmative, plaintiffs – through their expert, Dr. Rothman – have specifically identified two limitations of Claim 11 that are purportedly not disclosed by Wijay: (1) the requirement that flexure members be "interposed between a pair of straight strut portions..."; and (2) the requirement that the flexure member comprise "a U-shape."  Thus, the question is whether Wijay reads upon both these limitations, as demonstrated by the undisputed facts.

Beginning first with the "interposed" requirement, the court preliminarily notes that its claim construction order held that the phrase "interposed between a pair of straight strut portions which are disposed parallel to a longitudinal axis of the stent" must be construed in accordance with its ordinary meaning.  While neither party disputes this finding here, they do dispute what the ordinary meaning of "interposed between" requires in the context of the patents in suit.

---

[3]      Defendants' recitation of asserted claims is extremely confusing. Defendants' motion for summary judgment, for example, argues in part that Wijay anticipates independent claim 1 of the '037 patent, and dependent claims 8-9, 12-13, 17, 20, and 55 of the '037 patent. See Def. Mot. Summ. Judg. at 20:17-27.  However, at the hearing, defendants submitted a chart in support of their anticipation arguments in which defendants omit any reference to dependent claim 9 of the '037 patent, but add for the first time dependent claim 15.  See Anticipation Slide No. ABT-2.  The court is unable to conclusively determine which is defendants' actual position, but in view of defense counsel's representation at the hearing that the court should rely upon defendants' submitted claim chart, the court hereby adopts the positions set forth in defendants' claim chart at Slide No. ABT-2, as  the correct representation of defendants' asserted claims.

United States District Court

For the Northern District of California

Defendants contend that the "interposed between" limitation requires only that a flexure member be introduced or placed between a pair of straight, parallel strut portions, without regard for intervening objects, and with no physical connection required.  For support, they rely on Figure 6 of the '037 patent.  According to defendants, all parties agree that Figure 6 supports independent claim 22 of the '037 patent, which similarly requires a non-sinusoidal flexure member that is "interposed between a pair of straight strut portions which are disposed parallel to a longitudinal axis of the stent."  Turning to Figure 6, it depicts a non-sinusoidal flexure member that is "interposed" between two straight strut portions, with a circumferential member present which interrupts the connection between the flexure member and one of the straight strut portions.  See McCauley MSJ Decl., Ex. 27 at Fig. 6.  Thus, conclude defendants, since both parties agree that Figure 6 reads on claim 22 of the '037 patent, which has nearly identical language to the "interposed" language of claim 11 of the '255 patent, the "interposed between" language of claim 11 must be construed to encompass any design that includes a flexure member placed in between two straight strut portions, notwithstanding the fact that a circumferential portion of the stent is technically between the flexure member and one of the straight strut portions.

Medtronic, by contrast, maintains that the straight strut portions must be part of the same longitudinal portion as the flexure member that is interposed between the straight strut portions.  To that end, defendants' reliance on and interpretation of Wijay – which depicts struts from two separate longitudinal portions rather than one, when the presence of the intersecting circumferential member is properly taken into account – is at odds with the plain language of the claims.

On balance, the court finds that defendants' interpretation is more consistent with the ordinary meaning of the "interposed between" limitation of claim 11.  Medtronic does not appear to dispute, for example, that for purposes of Figure 6 of the '037 patent, a similar "interposed between" limitation refers to a flexure member that sits between straight strut portions contained in *two* separate longitudinal portions – i.e., precisely the opposite of

United States District Court

For the Northern District of California

what Medtronic asserts here.  Indeed, Medtronic presents the court with no persuasive reason why the parties' understanding of the "interposed between" limitation vis-a-vis Figure 6 of the '037 patent should not provide at least some guidance here, given the nearly identical claim language of the claims.  Even disregarding this argument, however, defendants' interpretation is also more consistent with the plain ordinary meaning of the "interposed between" language – which contains no allusion, in either the claim language or the specification of the '255 patent, to flexure members that must be physically connected to straight strut portions on either side of the flexure member.

Turning to Wijay itself, it discloses a design consisting of the same configuration of flexure members and straight strut portions advanced by defendants here – i.e., a design in which a flexure member is placed in between two straight strut portions, with a circumferential member intersecting the place in which one side of the flexure member connects with one of the straight strut portions.  See McCauley MSJ Decl., Ex. 20 at Fig. 2A.  Dr. Ricci – plaintiffs' expert – even confirmed this interpretation of Figure 2A.  See id. at Ex. 23 at 500-06.  Accordingly, and based on the above discussion, the court concludes that this depiction in Wijay does, in fact, disclose a flexure member "interposed between" two straight strut portions, as covered by claim 11 of the '255 patent.

The court cannot conclude the same, however, with respect to the parties' second dispute over Wijay's disclosure of flexure members comprising "U-shapes."  There is a material factual dispute on this point.

Looking once again at Figure 2A of Wijay, for example, which Dr. Ricci himself labeled according to the "straight strut" portion and "flexure member" portion, defendants assert that the "flexure member" portion rather obviously appears to contain what is a "U-shape."  See McCauley Decl., Exs. 20, 23 at 500-06.  Defendants argue first, that the word "comprise" in claim 11 – which states that the flexure member must "comprise[] an arcuate U-shape" – has been construed by the Federal Circuit to mean "containing" or "including."  They argue second that, taking this understanding, claim 11 requires only that the flexure

United States District Court

For the Northern District of California

member include or contain a U-shape, and is not limited exclusively to a U-shape. Defendants furthermore note that plaintiffs and/or their experts have themselves conceded that Wijay discloses a flexure member that can be carved into a U-shaped member, or that several similarly depicted flexure members *are* U-shaped.  See, e.g., Pl. Opp. MSJ Br. at 30:15-16; see also McCauley MSJ Decl., Ex. 35 at 46, 60-61, 131, 148; id. at Ex. 41 at 295-96, 302-07 (Dr. Penn, one of the inventors of the patents in suit, testifying that a U-shape need only have the general shape of the letter U, which can vary depending on the font and style used).  Defendants also point out that, during a reexamination request before the PTO filed by plaintiffs, plaintiffs admitted that Wijay does, in fact, disclose a U-shaped flexure member.  See McCauley MSJ Decl., Ex. 31 at 31.

In response, Medtronic contends that, with respect to the visual depiction of Figure 2A itself, and notwithstanding the appearance of a U-shape, the U-shape can only be discerned from segregating out a portion of what is really an S-shape flexure member.  And since the only way to get a U-shape is from an S-shape, this argument fails to establish that the flexure member is in fact a U-shape (as opposed to an S-shape).  Furthermore, plaintiffs note that their expert, Dr. Rothman, has expressly opined that the flexure member disclosed by Wijay is *not* a U-shape, because a U-shape means a shape that has "substantially full 180 degree semi-circular shape or a substantial arc of 180 degrees or less that connects two substantially straight and substantially parallel strut portions."  And with respect to the reexamination request that defendants assert admits that Wijay is comprised of a U-shaped flexure member, plaintiff points out that the reexamination request was related to an unrelated patent, and the statements therein analyzed different claim language relating to U-shaped turn back portions, as opposed to the U-shaped flexure members in question.  See, e.g., Pl. MSJ Opp. Br. at 30:19-24.

Ultimately, the parties' competing arguments and evidence as to whether Wijay contains a U-shaped flexure member constitutes a dispute of material fact as to whether Wijay anticipates claim 11 of the '255 patent, and the jury is entitled to resolve the issue.

United States District Court

For the Northern District of California

And since the dependent claims of the '255 patent – claims 13, and 15-16 – all depend upon independent claim 11, there is a dispute of material fact as to these claims, as well. The court therefore DENIES both parties' motions for summary judgment on the question whether Wijay anticipates the asserted claims the '255 patent.

> b.    '037 patent

The parties also dispute whether Wijay reads upon every limitation of claims 1 and/or 22 of the '037 patent.  Beginning with claim 1, Medtronic contends that Wijay cannot anticipate claim 1, because as Dr. Rothman – plaintiffs' expert – has opined, there is a critical limitation required by claim 1 that is missing from Wijay: the requirement that flexure members be "non-sinusoidal," or "not S-shaped," according to the court's earlier claim construction.  Defendants, however, argue that Wijay does, in fact, disclose non-sinusoidal flexure members, thereby making the Wijay patent anticipatory with respect to this claim.

Preliminarily, a visual observation of Figures 2 and 2A of the Wijay patent – which the parties focus on in their arguments – illustrates a flexure member with two bends in it, which has the overall shape of an S – i.e., it *does* appear sinusoidal.  Defendants, for their part, acknowledge this.  However, they note, by way of two arguments, that the Wijay patent does, in fact, disclose a flexure member that does *not* have an s-shape, notwithstanding Figures 2 and 2A.  First, defendants assert that the Wijay specification teaches that an alternative embodiment to the two-bend crosstie flexure member is a "one bend" flexure member.  And looking at Figures 2 and 2A, if one bend is removed from the flexure member, this necessarily results in a non-sinusoidal flexure member.  Second, defendants contend that since the court defined flexure member to mean "part of a longitudinal portion that provides flexibility," it is entirely consistent with this construction to look at Wijay's sinusoidal flexure members and by visually splitting them in half, conclude that Wijay's flexure members include a non-sinusoidal *part* of a longitudinal portion that provides flexibility – i.e., a non-sinusoidal flexure member.  In a similar way, for example, defendants contend that Figures 12f and 9 of the '037 patent also depict omega-shaped

10

United States District Court

For the Northern District of California

sections of flexure members that, while apparently single flexure members, can similarly be described as *parts* of longitudinal portions that provide flexibility.  See McCauley MSJ Decl., Ex. 27 at 10:51-53; 11:52-53; id. at Figures 9, 12f.

Medtronic, in response, points out that defendants' argument regarding the specification's alternative "one bend" flexure member is misleading, as the language that defendants rely on to prove their point actually does not refer to Figures 2 or 2A at all, but rather an entirely different drawing that does not refer to flexure members at all.  As for defendants' argument that the sinusoidal flexure members disclosed in Wijay can be viewed as comprising a non-sinusoidal flexure member as *part of* an overall sinusoidal flexure member, Medtronic notes that such an interpretation would read the non-sinusoidal limitation right out of the claim language, since every S-shape could always be non-sinusoidal.  Moreover, plaintiffs note, Wijay was already considered by the PTO, which expressly found that Wijay does *not* disclose a non-sinusoidal flexure member.

On balance, Medtronic's arguments persuade the court that Wijay does not anticipate the '037 patent claims because it does not appropriately disclose "non-sinusoidal" flexure members.  Even a cursory review of Wijay Figures 2 and 2A – upon which the parties' arguments are centered – discloses what appears to be an S-shaped, or sinusoidal, flexure member (as that term has been construed by this court).  See McCauley Decl., Ex. 20.  To be sure, defendants present a good argument that Wijay teaches toward a non-sinusoidal flexure member.  For as defendants note, Wijay's specification suggests that there are several alternative embodiments to the illustrated embodiment in Figure 2 and 2A, which potential embodiments may include crossties that can have a "more rigid, straight design or a more flexible design incorporating one or more bends."  See McCauley Decl., Ex. 20 at 8:55-57.  And contrary to Medtronic's argument, this specification language is not limited to figure 19 of the patent.  As such, it may be argued that an alternative embodiment that includes only a single bend in the cross-tie would be non-sinusoidal.

However, Medtronic is ultimately correct that defendants' position would completely

11

United States District Court

For the Northern District of California

1    read the non-sinusoidal limitation out of the patent.  Furthermore, Medtronic is correct that

2    the prosecution history discloses that Medtronic distinguished its invention from Wijay

3    before the PTO on grounds that Wijay does *not* disclose non-sinusoidal flexure members –

4    an argument that the PTO in the end accepted.  See Declaration of Kevin J. Malaney ISO

5    Pl. MSJ ("Malaney MSJ Decl."), Ex. 14 at MDT_1038204-05, Ex. 15, Ex. 17 at

6    MDT_1038292.  While this fact alone would not in and of itself prevent the court from

7    finding the prior art anticipatory, it does lend added support, in this instance, to the

8    correctness of Medtronic's position.  See also Glaxo Group Ltd., 376 F.3d at 1348

9    (defendants' burden to demonstrate anticipation is "'especially difficult' when, as is the

10   present case, the infringer attempts to rely on prior art that was before the patent examiner

11   during prosecution").[4]

12       In view of this evidence, the court finds that Wijay does not disclose a non-sinusoidal

13   limitation, and does not anticipate claim 1 of the '037 patent.  Summary judgment is

14   therefore GRANTED in plaintiffs' favor as to this issue, and DENIED as to defendants.

15       To the extent the parties' arguments focus on whether Wijay also anticipates claim

16   22 of the '037 patent, based on the "interposed" limitation of claim 22, this argument

17   overlaps with the court's discussion in connection with whether Wijay anticipates the '255

18   patent, see supra at 7-9.  For the same reasons expressed therein, the court concludes

19   here, too, that Wijay does in fact disclose a flexure member that is "interposed between"

20   two straight strut portions, as required by claim 22 of the '037 patent.  Thus, as to this

21   _____

22       [4]    Defendants attempt to dispute the prosecution history by noting that, during
     prosecution of the patents-in-suit, Drs. Penn and Ricci told the PTO that the "non-sinusoidal"
23   claims of the '037 patent "may be read on Figure 8" of what is now the '037 patent, which
     discloses flexure members that visually take the shape of an S.  See McCauley Opp. Decl.,
24   Ex. 6 at AB0732816.  However, not only does this fail to change the fundamental fact that the
     patent examiner had occasion to pass upon – and reject – the argument that Wijay read upon
25   the non-sinusoidal limitations of the '037 patent, but Medtronic has also responded to
     defendants' argument by noting the undisputed fact that the '037 patent was one of two
26   different Penn and Ricci patents being prosecuted before the patent examiner at the same
     time, each with different interview dates.  See Carmichael Report, Exs. 25-26, 37-39, 68.  The
27   interview summaries for both dates, however, were included in both patents' prosecution
     history, and the interview summary that defendants rely on appears to correspond to the
28   interview date dealing with the *unrelated* patent, not the '037 patent.

United States District Court

For the Northern District of California

1    issue, summary judgment is GRANTED in defendants' favor, and DENIED as to plaintiffs.

2                                                      * * *

3         In sum, there is a material dispute of fact as to whether Wijay anticipates claim 11 of

4    the '255 patent, thereby warranting DENIAL of both parties' motions as to this issue.  To

5    the extent that dependent claims 12-13 and 15-16 of the '255 patent are derived from claim

6    11, summary judgment is also DENIED as to both parties.

7         Summary judgment is GRANTED in plaintiffs' favor, however, as to whether Wijay

8    anticipates claim 1 of the '037 patent, while defendants' summary judgment motion on the

9    issue is DENIED.   With respect to whether Wijay anticipates claim 22 of the '037 patent,

10   summary judgment is GRANTED in defendants' favor, and DENIED as to plaintiffs.  And

11   since dependent claims 8, 12-13, 15, 17, 20, 29-30, 33-34, 41, and 55-56 of the '037 patent

12   all depend on independent claims 1 and/or 22, the same corresponding result follows for

13   each dependent claim, depending on the independent claim from which it derives.

14        3.    Fischell '442/Fischell '312

15        Finally, Medtronic seeks a judgment that Fischell '442 (either alone or in conjunction

16   with Fischell '312) does not anticipate either of the patents in suit.  Specifically, Medtronic

17   argues two points: first, that the Fischell prior art cannot anticipate either patent's claims

18   because the Fischell patents disclose sinusoidal flexure members that do not read upon the

19   non-sinusoidal or U-shaped flexure members claimed by the '037 or '255 patents.  Second,

20   that Fischell cannot anticipate because the Fischell patents do not disclose the structure of

21   an unexpanded stent, as do both patents in suit.  Defendants, for their part, assert that

22   Fischell properly discloses non-sinusoidal flexure members, as well as an unexpanded

23   stent with peak to valley connectors.

24        As to whether the Fischell patents disclose a non-sinusoidal or U-shaped flexure

25   member, neither party preliminarily disputes that the relevant claims of the '037 patent

26   require non-sinusoidal flexure members, whereas the relevant claims of the '255 patent

27   require U-shaped flexure members.  The question is simply whether Fischell discloses

28

                                                    13

United States District Court

For the Northern District of California

these limitations.

With respect to the '037 claims, the court answers this question in the negative.  As was the case with Wijay, Fischell, too, depicts a visual illustration of a flexure member that can only be described as sinusoidal – i.e., in the shape of an S.  See, e.g., Malaney MSJ Decl., Ex. 10 at Fig. 1; see also id. at Ex. 11 at Fig. 8.  Unlike Wijay, however, the Fischell specifications nowhere suggest that either of the Fischell patents are directed to non-sinusoidal flexure members.  And while defendants once again argue that the S shape should be viewed by halves – i.e., that the S shape could be viewed as two U-shapes that are simply connected together – this finds no support in Fischell itself, nor does the court find the argument independently persuasive, for the same reasons discussed above in connection with Wijay.  With respect to the '255 patent, which requires U-shaped flexure members, the arguments – and the court's conclusion – are similar.  It is not apparent, for example, based on a review of Fischell, that the patents disclose U-shaped flexure members.  See id.  Once again, the only way to arrive at this conclusion is to adopt defendants' by-now-familiar argument that the sinusoidal flexure member depicted in Fischell is capable of being divided in half to achieve a single U-shape – something which the court declines to do.  Accordingly, the court agrees with Medtronic that Fischell does not directly read on the non-sinusoidal or U-shaped limitations of the '037 or '255 patents.

As to the parties' second argument – whether Fischell '442 properly incorporates Fischell '312 by reference and therefore discloses an unexpanded stent with peak to valley connectors (as required by the patents in suit) – the real issue before the court boils down to whether defendants can demonstrate proper incorporation by reference.  Plaintiffs do not appear to dispute, for example, that Fischell '312 does disclose the unexpanded stent with peak to valley connectors; they simply dispute that the '312 patent has been properly incorporated by Fischell '442.

Both parties do agree on the relevant legal test, however.  To incorporate by reference, the prior art patent must "identify with detailed particularity what specific material

United States District Court

For the Northern District of California

1   it incorporates and clearly indicate where that material is found."  See Advanced Disp. Sys.,

2   Inc. 212 F.3d at 1282.  On balance, and applying this test, the court concludes that

3   plaintiffs are correct in arguing that Fischell '312 is not properly incorporated by reference.

4   The language of the '442 patent says that with respect to the stent that is claimed therein,

5   its "design advantages" are described in [Fischell '312], which is included "herein by

6   reference."  See Malaney MSJ Decl., Ex. 10 at 2:38-47.  This is an overly generic

7   incorporation that does not sufficiently describe the specific material that is being

8   incorporated.  It merely indicates that certain general "design advantages" are being

9   incorporated, without distinction as to what such design advantages are.

10          In sum, the court concludes that, for the reasons advanced by plaintiffs, Fischell '442

11  does not anticipate the claims of the '037 or '255 patents, whether alone or in combination

12  with Fischell '312.   Plaintiffs' motion for summary judgment as to this issue is therefore

13  GRANTED.

14  C.      Obviousness

15          While plaintiffs have not moved on obviousness grounds, defendants have.  As a

16  general matter, they seek a ruling that the asserted claims of the patents in suit are

17  obvious, based on the Wijay '940 patent, the '442 and '312 Fischell patents, and/or the

18  Israel '303 patent.  Specifically, defendants argue that independent claims 1, 22, and 43 of

19  the '037 patent and claim 11 of the '255 patent, as well as all relevant dependent claims,

20  are rendered obvious (to the extent not anticipated) because the foregoing prior art would

21  have made the stent design covered by the asserted claims obvious to a person having

22  ordinary skill in the relevant art.  Naturally, plaintiffs dispute this contention, focusing on the

23  claim limitations that the prior art allegedly fails to disclose or suggest:  (a) non-sinusoidal

24  and/or U-shaped flexure members; (b) flexure members that are interposed between two

25  straight portions; and (c) orthogonal flexure members.  Defendants' response accepts

26  plaintiffs' formulation of the obviousness inquiry and limits argument to the purportedly

27  "missing" elements identified by plaintiffs.

28

1    Thus, the ultimate question for the court is whether the foregoing elements – and

2    thus, the claimed stent design – would have been obvious at the time of the claimed

3    invention (i.e., 1996), to a person of ordinary skill in the art.

4          1.    Legal Standards for Obviousness

5    A patent is considered obvious if "the differences between it and the prior art" are

6    such that the subject matter as a whole would have been obvious at the time the invention

7    was made to a person having ordinary skill in the art. See 35 U.S.C. § 103(a).  To

8    determine obviousness, the court must "examine 1) the scope and the content of the prior

9    art; 2) the level of ordinary skill in the art; 3) the differences between the claimed invention

10   and the prior art; and 4) the objective evidence of nonobviousness." See Iron Grip Barbell

11   Co., Inc. v. USA Sports, Inc., 392 F.3d 1 317, 1320 (Fed. Cir. 2004), citing Graham v. John

12   Deere Co., 383 U.S. 1, 17-18 (1966).  Obviousness is a question of law based on

13   underlying questions of fact. Medical Instrumentation, 344 F.3d at 1220 (Fed. Cir. 2003)

14   (citation omitted).  As with anticipation, defendants have the burden of proving invalidity

15   due to obviousness by clear and convincing evidence.  See Quad Envtl. Techs. Corp. v.

16   Union Sanitary Dist., 946 F.2d 870, 872 (Fed. Cir. 1991).

17   Originally, a defendant attempting to prove obviousness was expected to show "a

18   motivation or suggestion" to combine separate elements of the prior art, along with "a

19   reasonable expectation of success" in doing so.  Boehringer Ingelheim Vetmedica, Inc. v.

20   Schering-Plough Corp., 320 F.3d 1339, 1354 (Fed. Cir. 2003).  See also Teleflex, Inc. v.

21   Ficosa North Am. Corp., 299 F.3d 1313, 1334 (Fed. Cir. 2002) ("The showing of motivation

22   to combine must be clear and particular, and it must be supported by actual evidence.").

23   However, in KSR Int'l Co. v. Teleflex, Inc., 127 S. Ct. 1727 (2007), the Supreme Court

24   revised this standard, cautioning that the requirements for a showing of obviousness

25   cannot be transformed into a rigid rule that effectively limits the obviousness inquiry.  See

26   id. at 1741 ("The obviousness analysis cannot be confined by a formalistic conception of

27   the words teaching, suggestion, and motivation, or by overemphasis on the importance of

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

published articles and the explicit content of issued patents.").  To that end, the <u>KSR</u> Court stated: "In determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls.  What matters is the objective reach of the claim."  <u>Id</u>. at 1741-42.

In describing the scope of any obviousness analysis to be undertaken on summary judgment, the <u>KSR</u> Court made several observations that are pertinent here.  It noted, for example, that a patent comprised of several elements is not proved obvious "merely by demonstrating that each of its elements was, independently, known in the prior art."  <u>See</u> <u>id</u>. at 1741.  Rather, the question is really whether "a person of ordinary skill can implement a predictable variation."  If so, then § 103 likely bars its patentability.  <u>Id</u>. at 1740 (the "predictable use of prior art elements according to their established functions" is not patentable).  For the same reason, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill."  <u>Id</u>.  In ruling on obviousness, the Court continued, it will furthermore often be necessary "for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue."  <u>Id</u>. at 1740-41.

Since <u>KSR</u>, the Federal Circuit has had several opportunities to consider this revised obviousness inquiry.  <u>See, e.g., Boston Scientific Scimed, Inc. v. Cordis Corp</u>. --- F.3d ----, 2009 WL 89246 (Fed. Cir. Jan. 15, 2009); <u>Sundance, Inc. v. DeMonte Fabricating Ltd.</u>, --- F.3d ---, 2008 WL 5351734 (Fed. Cir. Dec. 24, 2008); <u>Asyst Techs., Inc. v. Emtrak, Inc.</u>, 544 F.3d 1310 (Fed. Cir. 2008).  These cases further define the contours of the post-<u>KSR</u> obviousness inquiry, and confirm the <u>KSR</u> Court's exhortation that, "where the content of the prior art, the scope of the patent claim, and the

17

United States District Court

For the Northern District of California

level or ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent" in light of an objective review of these factors, summary judgment is appropriate.

With these principles in mind, the court examines the prior art in question, in light of the specific claims and limitations at issue between the parties.[5]

2.      "Non-sinusoidal" and/or "U-shaped"

Beginning first with the "non-sinusoidal" limitation (which the court has construed to mean "not S-shaped"), this limitation extends to the flexure members covered by independent claims 1, 22, and 43 of the '037 patent.  See McCauley MSJ Decl., Ex. 27 at 14:39-55, 15:54-16:6, 17:4-25; see also Order Construing Claims at 14-17.  Defendants contend that it would have been obvious to a person skilled in the art to substitute a non-sinusoidal flexure member for a sinusoidal one, based on Wijay '940 alone, or alternatively, based on Wijay in combination with Israel '303.

Looking to Wijay, defendants again note that although Figures 2 and 2A of Wijay depict a two-bend connector that looks sinusoidal, the '940 patent specification actually teaches a connector with "one or more bends" – which contemplates a necessarily non-sinusoidal one-bend connector.  See McCauley MSJ Decl., Ex. 20 at Fig. 2 and 2A; id. at 8:57-58.  Defendants also again note that one half of Wijay's sinusoidal connector would also satisfy the non-sinusoidal limitation.  These facts alone, say defendants, render the "non-sinusoidal" claim limitation obvious.  Moreover, however, they contend that by 1996, it would also have been obvious to modify Wijay's depicted two-bend connector to be non-sinusoidal because Israel '303 had disclosed non-sinusoidal connectors and expressly noted their use in enhancing stent flexibility, while the introduction of the NIR stent also utilized non-sinusoidal and curved connector shapes.  See id. at Ex. 19 at 3:40-43; Ex. 10 at 137-39.  Indeed, say defendants, even Dr. Penn had personally observed the enhanced

---

[5]      The court notes, preliminarily, that the parties agree on the definition to be given to a person of ordinary skill in the art in this case: "an interventional cardiologist assisted, as necessary, by an engineer."  See, e.g., Def. MSJ Br. at 22 fn. 12.

flexibility provided by the NIR stent described in Israel '303 by 1996. See id. at Ex. 24 at 851. Defendants accordingly conclude that plaintiffs' substitution of a non-sinusoidal flexure member for a sinusoidal flexure member in order to improve stent flexibility, involved nothing more than "the predictable use of prior art elements according to their established functions," as contemplated by KSR. See 127 S. Ct. at 1740.

Plaintiffs, by contrast, point to several facts demonstrating the purported nonobviousness of the claimed non-sinusoidal flexure member (which also must be arcuate). First, they note that up until 2001, defendants' own stent designs all included straight connectors, rather than the curved non-sinusoidal connectors that are covered by the claims. See Declaration of Kadie M. Jelenchick ISO MSJ Opp. ("Jelenchick MSJ Opp. Decl."), Ex. 4 at AB 0521121. It took defendants numerous failed experiments with several iterations of stent designs over the relevant years – which included the notable rejection of curved and non-sinusoidal connectors – to arrive at the current curved connector employed in defendants' accused product. See Declaration of Kadie M. Jelenchick ISO MSJ Opp. ("Jelenchick MSJ Opp. Decl."), Ex. 4 at AB 0521121, Ex. 11 at AB 0623377-78, AB 0623390, Ex. 13 at 116:11-21, Ex. 14 at AB 0604645-46; Malaney MSJ Decl., Ex. 24. Thus, claim plaintiffs, defendants' own failed efforts demonstrate that it could not have been obvious as of 1996 to replace the sinusoidal connector depicted in Wijay with the curved flexure member that is covered by the non-sinusoidal limitations of the '037 patent. Second, plaintiffs point out that, as defendants' own stent designers testified, it is not possible to predict or assess stent performance or flexibility from drawings alone; actual testing on models is required for such an assessment to be made. See Jelenchick ISO MSJ Opp., Ex. 21 at 92:19-94:8, Ex. 22 at 65:5-20, 91:6-92:23. It would be impossible to predict, for example, whether replacing a straight connector with a shaped connector would increase flexibility, without testing such a stent. See id., Ex. 21 at 166:6-18; Ex. 22 at 97:2-8. Thus, the very nature of stent design is unpredictable, and it could not have been obvious to a person skilled in the art to substitute a curved non-sinusoidal flexure member

United States District Court

For the Northern District of California

for the sinusoidal flexure member disclosed in Wijay, or for the connector disclosed in Israel.

Finally, plaintiffs point to the expert testimony of Drs. Eberhart and Ku, which states that the flexure members of the claimed stent design would have been unpredictable – and therefore, nonobvious – to one skilled in the art in 1996 or 1997, since such a person would have been concerned that the flexure members would lead to undesirable twisting and uneven expansion, based on the known prior art and literature at the time.  See, e.g., Expert Report of Dr. Robert Eberhart on Validity, ¶¶ 14-18; Supplemental Expert Report of Dr. Robert Eberhart on Validity, ¶¶ 7, 14-20; Expert Report of Dr. David Ku Relevant to Issue of Nonobviousness, ¶¶ 20-29.  Indeed, based on this testimony, plaintiffs say that the evidence actually taught *away* from the claimed non-sinusoidal connectors.

On balance, and although defendants have at first blush come forward with a plausible case for obviousness based on the simple substitution of one known element for another, the court finds that plaintiffs' evidence successfully raises disputed issues of material fact with respect to the scope and content of the prior art, as well as the level of ordinary skill in the art.  Notably, plaintiffs' evidence:  (1) raises a question of fact as to whether a person of skill in the art would have been able to predict that a viable stent design could have resulted from replacing the sinusoidal connector disclosed in Wijay or the non-sinusoidal connector disclosed in Israel with a curved non-sinusoidal flexure member, based merely on the stent designs depicted in the prior art; and (2) establishes that a person of skill in the art would, if anything, have been skeptical of replacing the connectors disclosed in the prior art with the claimed non-sinusoidal flexure members, due to concerns that the shaped flexure members would lead to undesirable twisting and uneven expansion.  See KSR, 127 S. Ct. at 1740 (critical question pursuant to § 103 is whether, in face of prior art elements, "a person of ordinary skill can implement a predictable variation"); Orthopedic Equip. Co. v. United States, 702 F.2d 1005, 1013 (Fed. Cir. 1983)(acknowledging that evidence that "skilled persons in the art felt that there was

United States District Court

For the Northern District of California

1    some technological incompatibility that prevented" combination of two prior art elements is

2    "telling on the issue of nonobviousness").

3         Moreover, plaintiffs have also come forward with sufficient facts to raise a material

4    dispute of fact with respect to secondary considerations of nonobviousness.  Plaintiffs'

5    evidence regarding defendants' own failed attempts to successfully design a stent with

6    curved non-sinusoidal connectors, including the rejection of such, is material on this point.

7    See Advanced Display Systems, Inc. v. Kent State University, 212 F.3d 1272 (Fed. Cir.

8    2000)(noting that when evidence in the record fully supports a finding that others in the

9    industry failed to solve the problem, then objective considerations "may ... establish that an

10   invention appearing to have been obvious in light of the prior art was not.").  So is the

11   evidence that links the commercial success of defendants' accused Vision stent to the

12   claimed elements of the patents in suit.  See, e.g., Jelenchick ISO MSJ Opp., Ex. 34, Ex.

13   26 at 55:23-56:3; Asyst Technologies, Inc. v. Emtrak, Inc., 544 F.3d 1310, 1316 (Fed. Cir.

14   2008).

15        Finally, it is also worth noting that, although the parties do not expressly raise the

16   issue insofar as obviousness is concerned, the fact remains that the PTO's consideration of

17   the same prior art references now in dispute, and its ultimate decision to issue the patent

18   over the prior art objections, must be taken into account.  See Declaration of Kevin J.

19   Malaney ISO Pl. MSJ ("Malaney MSJ Decl."), Ex. 14 at MDT_1038204-05, Ex. 15, Ex. 17 at

20   MDT_1038292; see also PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1304

21   (Fed. Cir. 2008)("When no prior art other than that which was considered by the PTO

22   examiner is relied on by the attacker, he has the added burden of overcoming the

23   deference that is due to a qualified government agency presumed to have properly done its

24   job"); American Hoist & Derrick Co. v. Sowa & Sons Inc., 725 F.2d 1350, 1359 (Fed. Cir.

25   1984).

26        In sum, for all the foregoing reasons, the court finds that plaintiffs have met their

27   burden in raising a triable issue of fact on the question of obviousness with respect to the

28

**United States District Court**
For the Northern District of California

non-sinusoidal limitation disclosed in claims 1, 22, and 43 of the '037 patent.

Turning next to the U-shaped limitation of claim 11 of the '255 patent (and of dependent claim 17 of the '037 patent), defendants make the similar argument that it would have been obvious to a person skilled in the art to employ a U-shaped flexure member, in light of Fischell '442 or Israel '303 – both of which disclose flexure members that plaintiffs have purportedly already admitted include U-shapes. See McCauley MSJ Decl., Ex. 50 at 15:18-34. In support of this argument, defendants generally make overlapping arguments with those submitted in connection with the foregoing non-sinusoidal discussion. They contend, for example, that Israel '303 discloses a U-shaped flexure member on its face, and that Fischell '442 does the same, once the flexure member depicted therein is visually cut in half. See id. at Ex 19, Fig. 1; Ex. 21, Fig 1. In addition, however, they note that plaintiff Evysio's expert in an unrelated case, and plaintiffs' own expert here, Dr. Eberhart, have admitted that by 1996, it was well known to a person of skill in the art that a U-shaped flexure member is one of the simplest structures to introduce flexibility into a beam. See id. at Ex. 30 at 70; Ex. 46 at 56, 236. Thus, conclude defendants, even the inclusion of a more exaggerated U-shape in the claimed flexure member would have been obvious as of 1996.

As is the case with defendants, plaintiffs' opposing arguments and evidence – e.g., the evidence relating to defendants' own failed efforts, the unpredictability of stent design, the evidence teaching away from the claimed design, and secondary considerations of nonobviousness – are in large part duplicative of those submitted in connection with the non-sinusoidal discussion. Plaintiffs additionally note, however, that insofar as defendants rely on the expert testimony from prior unrelated litigation regarding the level of skill in the art, that testimony says nothing at all about whether it would have been obvious to modify an S-shaped connector into a U-shaped connector, and it furthermore contradicts defendants' argument entirely, since the testimony expressly states that the possible number of acceptable stent designs is "infinite." See Jelenchick ISO MSJ Opp., Ex. 33 at

United States District Court

For the Northern District of California

122-24.  Moreover, although defendants assert that Dr. Eberhart testified that the function of a U-shaped flexure member was well known in 1996, plaintiffs note that defendants' own expert gave testimony that casts doubt on any conclusion that the claimed U-shaped flexure members would have been obvious, since defendants' expert testified that it was a scientific fact that an S-shaped flexure member would be more flexible than a similarly dimensioned U-shaped flexure member.  See id. at Ex. 8 at 199:25-201:1.

For the same reasons highlighted above in connection with the non-sinusoidal limitation, the court once again concludes that a disputed question of material fact on the issue of obviousness exists.  Specifically, plaintiffs have raised a material dispute as to whether a person of skill in the art would have been able to predict that a viable stent design could have resulted from replacing the U-shaped connector depicted in Israel and/or Fischell with the curved U-shaped connector covered by the claims, or whether the evidence at the time taught away from replacing the connectors disclosed in the prior art with the claimed U-shaped flexure members.

In sum, therefore, the court concludes that the foregoing establishes material disputes of fact with respect to whether the above prior art references render the limitations at issue – and therefore, the claimed invention as a whole – obvious.

3.      "Interposed" limitation

Claim 22 of the '037 patent and claim 11 of the '255 patent both require a flexure member that is "interposed between a pair of straight strut portions which are disposed parallel to a longitudinal axis of the stent..." – a phrase that the court held must be construed according to its ordinary meaning.  See McCauley MSJ Decl., Ex. 27 at 16:3-5; Ex. 50 at 15:29-32; see also Claim Construction Order at 18-19.

Defendants argue that, according to the phrase's ordinary meaning, the prior art satisfies the "interposed" requirement, in light of either Wijay '940 itself, Israel '303, or Fischell '442.  Defendants specifically point to plaintiff Evysio's representation to the PTO that including straight strut portions on either side of the curved connector in Wijay was

23

United States District Court

For the Northern District of California

1  merely a "design choice" – a term that Evysio's representative admitted typically means

2  "obvious."  See id. at Ex. 31 at 32-33; Ex. 49 at 130.  Furthermore, defendants argue that

3  the simple concept of interposing a flexure member between two straight strut portions

4  would have been apparent to one skilled in the art as of 1996 from examination of Israel

5  '303 or Fischell '442, both of which on their face disclose flexure members that are directly

6  attached to straight strut parallel portions on either side – as plaintiffs' own expert testified.

7  See id. at Ex. 34 at 309-11.

8      In opposition, plaintiffs preliminarily note that defendants have improperly focused on

9  the obviousness of interposing a flexure member between two straight strut portions,

10 without considering the other limitations of the claims – i.e., the arcuate U-shape and

11 arcuate non-sinusoidal requirements of the claims.  Even looking at defendants' evidence

12 substantively, however, plaintiffs dispute defendants' reliance on statements made by

13 Evysio's representative before the PTO, since those statements were made in the context

14 of an entirely different patent, and were also based on an assumed filing date of 2000 –

15 several years after 1996.  See McCauley MSJ Decl., Ex. 31 at 25; Jelenchick ISO MSJ

16 Opp., Exs. 36-37.  Moreover, plaintiffs note that defendants cannot rely on either Israel or

17 Fischell, since defendants' evidence fails to establish that one actually skilled in the art

18 would have found the combinations disclosed in Israel or Fischell obvious.

19     As an initial matter, plaintiffs are correct that as a general matter of law, the

20 obviousness inquiry must focus on the invention as a whole, not specific limitations.  See

21 Hartness Intern. Inc. v. Simplimatic Engineering Co., 819 F.2d 1100, 1108 (Fed. Cir.

22 1987)(the inquiry is not whether each element existed in the prior art, but whether the prior

23 art made obvious the invention as a whole for which patentability is claimed).

24 Notwithstanding the correctness of this observation, however, it is still a proper exercise to

25 examine the prior art in question with respect to the individual elements and limitations

26 purportedly disclosed therein, in order to assess whether the ultimate claimed invention as

27 a whole is a predictable variation of the various elements known to one of skill in the art at

28

24

United States District Court

For the Northern District of California

1    the time of the invention.

2          Turning to the prior art in question, the court first finds unpersuasive defendants'

3    evidence with respect to the statements made by Evysio's representative before the PTO.

4    As plaintiffs point out, the statements made therein, even if dealing with the same subject

5    matter and similar claim language, nonetheless were made in reliance on an entirely

6    separate underlying patent.  See McCauley MSJ Decl., Ex. 31 (request for ex parte

7    reexamination of '817 patent).  This lessens the probative value of the statements made in

8    those proceedings vis-a-vis the current patents in suit.  Notwithstanding this finding,

9    however, and as the court's discussion regarding the "interposed" requirement vis-a-vis the

10   parties' anticipation arguments make clear, defendants are correct that Wijay *does* disclose

11   this limitation and even anticipates those claims for which the "interposed" limitation is the

12   only disputed issue between the parties.  Moreover, Dr. Rothman's statement purportedly

13   conceding Fischell's depiction of a flexure member satisfying the "interposed" requirement

14   is certainly probative of and relevant to the obviousness inquiry.   See id. at Ex. 34 at 311

15   (conceding that Drs. Penn and Ricci were not the first to "come up with the idea of having

16   longitudinal portions in a stent with two straight portions, and interposed between them, a

17   curved portion").

18         Nonetheless, in view of the distinctions between the anticipation and obviousness

19   inquiries, and in the face of plaintiffs' evidence submitted in opposition to all of defendants'

20   obviousness arguments, see above discussion, supra, the court concludes that a triable

21   issue of fact remains as to whether the "interposed" limitation feature, to the extent

22   disclosed in Fischell, would have been obvious to a person skilled in the art in 1996.

23         In sum, while the court finds that Wijay does, in fact, disclose the "interposed"

24   limitation for purposes of the anticipation inquiry, and is suggestive of obviousness, the

25   evidence as a whole does not allow the court to conclude that defendants' have sufficiently

26   discharged their burden to establish obviousness by clear and convincing evidence such

27   that summary judgment should be granted as to obviousness of the claims as a whole.

28

United States District Court

For the Northern District of California

4.      "Orthogonal" limitations

Finally, claim 43 of the '037 patent requires a non-sinusoidal and arcuate flexure member "comprising a pair of substantially straight strut portions disposed substantially orthogonal to a longitudinal axis of the stent, the pair of substantially straight strut portions being interconnected by a curved portion."  See McCauley MSJ Decl., Ex. 27 at 17:16-25. Defendants contend that the "orthogonal U" limitation encompassed by claim 43 would have been an obvious modification to Wijay in 1996, or alternatively, would have been obvious based on Fischell '442.  See Def. Mot. Summ. Judg. at 26:2-24.  Defendants assert, for example, that the flexure members depicted in Fischell disclose orthogonal U-shapes, and that it would have been obvious to a person of ordinary skill in 1996 to "tweak" the sinusoidal flexure member disclosed in Wijay to have a more orthogonal U-shape. Defendants also once again marshal the testimony of plaintiffs' expert Dr. Eberhart for added support, pointing once more to Dr. Eberhart's testimony that one of skill in the art would have known in 1996 that a U-shape is "one of the simplest structures that can be used to introduce flexibility into a beam."  See McCauley MSJ Decl., Ex. 46 at 236.

Plaintiffs, relying largely on the same evidence discussed by the court above, argue both that defendants' evidence fails to establish obviousness with clear and convincing evidence, and that the factual evidence goes so far as to contradict defendants on material points, since it firmly supports *non*obviousness of the claims at issue.

Accordingly, for the same reasons that there are material disputed facts with respect to the obviousness inquiry in relation to the foregoing claim limitations, there are also disputed issues of material fact in connection with the "orthogonal U" limitation.

* * *

In sum, and for all the foregoing reasons, the court concludes that there are material disputes of fact as to whether the majority of the foregoing claim limitations – and by extension, the invention covered by the claims at issue – would have been obvious to a person skilled in the art in 1996.  Defendants' motion for summary judgment on the issue of

United States District Court

For the Northern District of California

1   obviousness in light of the prior art references in question is accordingly DENIED.  Since

2   dependent claims asserted as obvious by defendants all depend on independent claims 1,

3   22, and/or 43 of the '037 patent, and independent claim 11 of the '255 patent, the same

4   result follows with respect to these claims, too.

5   D.   Secret Fischell Designs and Internal Work

6        Plaintiffs also seek summary judgment on an issue that is in part related to the

7   foregoing obviousness inquiry – i.e., whether certain internal work/design evidence relied

8   on by defendants is admissible.  The internal work/designs at issue include references

9   from: (1) Brian Brown; (2) Timothy Limon; (3) Dan Cox; (4) Matthew Birdsall; and (5) the

10  Fischells.  Specifically, Medtronic seeks a ruling that these references are inadmissible per

11  se, since they constitute non prior art that was suppressed, concealed and/or abandoned.

12  Defendants, by contrast, assert that summary judgment as to inadmissibility per se is

13  improper, since the evidence constitutes evidence of contemporaneous conception that is

14  admissible for the limited purposes of showing the relevant level of ordinary skill in the art

15  at the time of the invention, as well as showing "secondary evidence" of obviousness.

16       Preliminarily, it should be noted that, as Medtronic points out, defendants do not

17  dispute either their reliance on the five internal work sources, or the fact that each example

18  of a design was abandoned, concealed, or suppressed.  See Malaney Decl., Exs. 22 (Brian

19  Brown design); 24-25 (Tim Limon design); 26 (Donald Cox design); 27-28 (Birdsall design);

20  3, 37-18 (certain Fischell designs[6]).  Thus, the question for the court is whether plaintiffs

21  are entitled to a ruling that the various designs' suppression and concealment from the

22  public means that the references are necessarily non prior art and inadmissible for

23  purposes of showing invalidity.

24       Pursuant to 35 U.S.C. § 102(g), "[a] person shall be entitled to a patent unless ...

25  before such person's invention thereof, the invention was made in this country by another

26

27       [6]   The Fischell designs at issue here appear distinct from the Fischell patents that

28  defendants rely on as prior art – which are obviously both public and prior art.

United States District Court

For the Northern District of California

inventor who had not abandoned, suppressed, or concealed it."  Thus, evidence of abandonment, suppression, or concealment of an invention does indeed suggest that the invention cannot be used to demonstrate general non-patentability or invalidity of a patent. For that reason, Medtronic is correct that the references in question are not prior art, in view of defendants' concession that the references all deal with designs that were abandoned, concealed, and/or suppressed.  Furthermore, insofar as Medtronic raises this issue with respect to the obviousness inquiry that is specifically applicable pursuant to 35 U.S.C. § 103, Medtronic is correct that "[t]he term 'prior art' as it is used in 35 U.S.C. § 103 should include all inventions which were made in this country before an applicant or patentee made his invention, regardless of when those inventions are made public or patent applications on them are filed, so long as those inventions are found not to have been abandoned, suppressed, or concealed."  See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1437 (Fed. Cir. 1988).  Thus, to the extent defendants do not dispute that the references at issue were never made public and were kept from public disclosure, they cannot be used as invalidating prior art under 35 U.S.C. §§ 102 and 103.

Defendants argue, however, that even if the references are not admissible as prior art, they are nonetheless admissible as evidence of both the ordinary level of skill in the art, and as a secondary consideration relating to obviousness.[7]  In this, they are correct.

In Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH, 139 F.3d 877 (Fed. Cir. 1998), the Federal Circuit considered two particular references before it that were submitted as evidence of contemporaneous independent development, and determined that while the references "do not qualify as 'prior art' under [§ 102 or § 103(A)]," the

---

[7]     As noted in connection with the foregoing obviousness discussion, secondary considerations of obviousness refers to one of the catch-all factors that a court may consider in arriving at the legal conclusion whether obviousness exists.  See Rogers v. Desa Intern. Inc., 198 Fed. Appx. 918, 920 (Fed. Cir. 2006)(obviousness "depends on at least four underlying factual determinations: (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations").

references were nonetheless "relevant to obviousness as a secondary consideration." See 139 F.3d at 884.  In so ruling, the Federal Circuit also noted that evidence of contemporaneous independent invention is also relevant to the level of ordinary skill in the art insofar as the obviousness inquiry is concerned.  See id. at 883 ("Although this court has noted the relevance of contemporaneous independent invention to the level of ordinary knowledge or skill in the art, it has also acknowledged the view that this evidence is relevant as a secondary consideration")(citations omitted); see also Stewart-Warner Corp. v. City of Pontiac, Mich., 767 F.2d 1563, 1570 (Fed. Cir. 1985)("Development by others may also be pertinent to a determination of the obviousness of an invention").

All of which means that, even if the references at issue do not constitute prior art that is admissible for purposes of invalidating Medtronic's patent pursuant to § 102 and § 103, the references are nonetheless admissible for purposes of demonstrating the ordinary skill in the art with respect to obviousness, and as evidence going to secondary considerations of obviousness.  And while Medtronic strenuously opposes this conclusion on grounds that it is the suppression and concealment factor that makes Monarch Knitting inapplicable to the facts here, it relies on a 1967 Eastern District of Virginia case to do so, which does not expressly address whether non-prior art can come in for secondary considerations of obviousness or determinations of ordinary skill in the art (notwithstanding whether the non-prior art is also suppressed, abandoned, or concealed).  See, e.g., Grinnell Corp. v. Va. Elec. & Power Co., 277 F. Supp. 507, 518 (E.D. Va. 1967).  Furthermore, Medtronic overlooks the fact that Monarch Knitting Machinery Co. did at least partially pass upon the question whether the admissibility of non prior art on the issue of secondary considerations of obviousness is affected by the non prior art's concealment or suppression from the public.  The Monarch Knitting court found, for example, that one of the two references before it was "never produced" and that the second was "produced after the priority filing date" of the patent in suit and then and only for the actual competitor, not for the public. See 139 F.3d at 884.  Nonetheless, the court considered them on the issue of obviousness.

United States District Court

For the Northern District of California

1

2   Accordingly, while Medtronic correctly suggests that the references of the designs

3   mentioned do not qualify as invalidating prior work under section 35 U.S.C. § 102(g) or as

4   prior art under 35 U.S.C. § 103, a summary judgment ruling that the references are

5   inadmissible per se is inappropriate, as the references may nonetheless be admissible as

6   evidence of contemporaneous invention going to the level of ordinary knowledge or skill in

7   the art, or evidencing secondary considerations of obviousness.

8   As such, Medtronic's motion for summary judgment on this point should be

9   DENIED.

10  E.   Indefiniteness

11  A claim is indefinite if a person of ordinary skill in the art would not understand its

12  scope when reading the claim in light of the specification.  See, e.g., Halliburton Energy

13  Servs., Inc. v. M-I LLC, 514 F.3d 1244, 1249 (Fed. Cri. 2008).  Generally, indefiniteness is

14  a question of law to be determined by the court.  Union Pac. Res. Co. v. Chesapeake

15  Energy Corp., 236 F.3d 684, 692 (Fed. Cir. 2001).  Here, plaintiffs challenge defendants'

16  argument that three claim terms – "flexure member," "arcuate," and "U-shaped" – are

17  indefinite, and seek summary judgment in their favor on the issue.  Defendants, for their

18  part, also seek summary judgment on the issue of indefiniteness, but limit their request to

19  the issue whether the term "U-shaped" alone is indefinite.

20  Preliminarily, the terms "flexure member" and "arcuate" are not indefinite.  Both were

21  construed by the court during claim construction.  And as plaintiffs note, this fact precludes

22  a finding of indefiniteness.  As the Federal Circuit has stated: "if a claim is not amenable to

23  construction, the claim is invalid as indefinite under 35 U.S.C. § 112, ¶ 2.  But if a claim is

24  amenable to construction, however, then 'even though the task may be formidable and the

25  conclusion may be one over which reasonable persons will disagree,' the claim is not

26  indefinite."  See Novo Indus., L.P. v. Micro Molds Corp., 350 F.3d 1348, 1353

27  (Fed.Cir.2003); Exxon Res. & Eng'g Co. v. United States, 265 F.3d 1371, 1375

28

United States District Court

For the Northern District of California

1  (Fed.Cir.2001).

2      This leaves only the term "U-shaped" for resolution.  In support of their argument

3  that this term is indefinite, defendants point out that plaintiffs themselves have been

4  inconsistent in their interpretation of "U-shaped," and that plaintiffs' own experts disagree

5  on the meaning of U-shaped.  Defendants cite to numerous references in the discovery

6  record, and in plaintiffs' experts' deposition testimony and reports, that purportedly illustrate

7  disagreement over those figures that properly depict a U-shape.  See Def. Mot. Summ.

8  Judg. at 32:14-35:3; McCauley MSJ Decl., Ex. 35 at 60-61, 104, 148, 160.

9      This evidence, however, is not proof of indefiniteness.  None of it demonstrates that

10  a person of ordinary skill in the art would not understand the scope of the phrase "U-

11  shaped" when reading the phrase in light of the specification.  Moreover, as plaintiffs point

12  out, the court repeatedly referenced the phrase U-shaped in its claim construction order,

13  and even the most cursory review of the order suggests that the court's discussion was

14  premised upon an implicit understanding of U-shaped as any design in the shape of a U.[8]

15  The court's easy reliance on the term thus further suggests that it is not indefinite.

16      Even putting this argument aside, however, plaintiffs are also correct that any proper

17  inquiry into indefiniteness must focus on the claims and specifications of the patents in

18  question.  See Solomon v. Kimberly-Clark Corp., 216 F.3d 1372, 1377 (Fed. Cir. 2000).

19  Here, the specification is instructive, as it sheds further light on the meaning of "U-shaped."

20  See McCauley MSJ Decl., Ex. 50 at 11:49-51; id. at Fig. 12g.  The specification expressly

21  refers, for example, to a flexure means that may be considered an "opposed omega" and

22  "U-joint" as illustrated in Figure 12g.  And turning to Figure 12g, it depicts a flexure member

23  that has an omega curved portion on top, and a distinct U-shaped portion on the bottom.

24  This depiction is consistent with a construction of "U-shaped" that corresponds with the

25  terms ordinary meaning – i.e., referring to the general shape of a U.

26      To the extent, moreover, that defendants are relying on conflicting examples of what

27  _____

28      [8]      It is worth noting that neither party sought construction of the term "U-shaped."

31

United States District Court

For the Northern District of California

1   U-shaped actually means, plaintiffs correctly note that these examples do not go to the

2   central question whether U-shaped can actually be understood by a person of ordinary skill

3   in the art.  Rather, they address the secondary issue whether, once construed, plaintiffs are

4   correctly *applying* the proper construction of U-shaped.  In other words, the contradictions

5   noted by defendants highlight issues that go to the infringement analysis – not to claim

6   construction issues or indefiniteness.

7        On balance, therefore, and for all the foregoing reasons, the court finds that the term

8   "U-shaped" is not indefinite.  The court accordingly GRANTS plaintiffs' motion for summary

9   judgment on the issue whether the three claim terms at issue are indefinite, and DENIES

10  summary judgment to defendants on the issue whether the term "U-shaped" is indefinite.

11  F.    Derivation Defense

12       Defendants have asserted a derivation defense, arguing that the patented invention

13  at issue was not actually invented by the inventors listed on the patent, but rather by others

14  – thereby rendering the patents in suit invalid.  See 35 U.S.C. § 102(f) (establishing

15  individual's entitlement to a patent unless "he did not himself invent the subject matter

16  sought to be patented").  Specifically, defendants contend that the patents in suit were

17  derived from the work of the Fischells and their company IsoStent, and in particular, that

18  Mr. Shukov – a stent cutter hired by numerous companies, including IsoStent and later

19  Evysio's predecessor – must have passed information about confidential Fischell designs to

20  Drs. Penn and Ricci, the inventors of the patents in suit.  Medtronic vigorously contests

21  defendants' claims and seeks summary judgment on grounds that defendants' derivation

22  defense cannot be proven to any reasonable juror with clear and convincing evidence.

23       Generally, to show derivation, the party asserting invalidity must prove both (a) prior

24  conception of the invention by another; and (b) communication of that conception to the

25  patentee.  See Gambro Lundia AB v. Baxter Healthcare Corp., 110 F.3d 1573, 1576 (Fed.

26  Cir. 1997).  The 'conception' must be more than the realization of a desirable result, and

27  more than a mere hope or expectation.  See Garrett Corp. v. United States, 422 F.2d 874

28

United States District Court

For the Northern District of California

1    (Ct. Cl. 1970).  As plaintiffs note, derivation must also be proven with clear and convincing

2    evidence.  See Gambro Lundia, 110 F.3d at 1576.

3        Defendants' evidence in support of their defense consists of the following:  that in

4    1993, the Fischells came up with a peak to valley stent design with curved longitudinal

5    connectors similar to that claimed by plaintiffs; this design was disclosed in their '312 patent

6    in 1994, two years before Drs. Penn and Ricci filed their first patent application; that in

7    summer of 1994, the Fischells engaged Mr. Shukov to laser-cut their stents on a

8    confidential basis; that between 1994 and 1996, Mr. Shukov came into contact with

9    numerous of the Fischells' peak to valley curved connector stent designs; that in March

10   1995, Drs. Penn and Ricci sought out Mr. Shukov and eight months later, made Mr. Shukov

11   an equal partner in their original company, Divysio.  See Declaration of Robert McCauley

12   ISO MSJ Opp. ("McCauley Opp. Decl."), Exs. 22 at 121, 138, 215; 23 at 75, 83, 119; 27;

13   30; 31 at 270-71; 115.  Defendants also note that Dr. Ricci's own notes indicate that Mr.

14   Shukov showed him "several stents that are either proprietary or no longer in consideration"

15   and that Dr. Ricci looked at other companies' stent designs while visiting LPL.  See id. at

16   Ex. 30 at L001035.

17       Plaintiffs, however, point to Dr. Ricci's testimony, in which Dr. Ricci said that Mr.

18   Shukov never communicated proprietary information that he learned from another

19   company, and never showed him proprietary stents or designs owned by another company.

20   See Declaration of Kevin Malaney ISO Pl. MSJ ("Malaney MSJ Decl."), Ex. 6 at 49, 51.

21   Furthermore, plaintiffs note, Mr. Shukov himself also testified that he never communicated

22   confidential information about one customer's designs to another customer, and that

23   neither he nor LPL ever disclosed any IsoStent designs to the inventors of the patents in

24   suit.  See id. at Ex. 7 at 93-95; see also id. at Ex. 30 at 80, 82, 86.

25       This discrepancy between defendants' evidence suggesting that Mr. Shukov came

26   into direct contact with numerous Fischell designs and disclosed certain designs to Drs.

27   Penn and Ricci, and plaintiff's evidence that neither Dr. Ricci nor Mr. Shukov ever

28

33

United States District Court

For the Northern District of California

1   discussed any stent designs proprietary to IsoStent, constitutes a material dispute of fact.

2   In particular (and putting aside the question of Fischells' prior conception of the invention),

3   it is a material dispute of fact as to whether Mr. Shukov ever communicated the Fischells'

4   invention to Drs. Penn and Ricci – a requisite element for finding the derivation defense

5   satisfied.  The jury is entitled to resolve this factual dispute and to determine the credibility

6   of Dr. Ricci, Mr. Shukov, and remaining witnesses.

7       The court accordingly DENIES plaintiffs' motion for summary judgment with respect

8   to defendants' derivation defense.

9   G.    Written Description Defense

10      A patent specification must "contain a written description of the invention."  See 35

11  U.S.C. § 112, ¶ 1.  Defendants contend, however, that certain asserted claims of the

12  patents in suit do not meet this written description requirement.  Specifically, they target two

13  asserted limitations contained within the patents in suit, arguing that neither has written

14  description support: (a) the requirement of a single U-shaped flexure member in claims 1

15  and 17 of the '037 patent; and (b) the requirement that the flexure members covered by the

16  patent claims provide for both complementary extension and compression, and non-

17  complementary extension and compression.  Plaintiffs, for their part, now seek summary

18  judgment on defendants' defense.

19      First, defendants argue that contrary to plaintiffs' contention, claim 17 of the '037

20  patent (which depends from claim 1) cannot be read as covering a single U-shaped flexure

21  member, because the patent and specification do not disclose a single U-shaped flexure

22  member.  See, e.g., McCauley MSJ Decl., Ex. 27 at Claim 17 (claiming "the stent defined in

23  Claim 1, wherein said flexure member, in two dimensions, is U-shaped").  They note, for

24  example, that the language of claim 17 covers a longitudinal member "having a flexure

25  member," which should properly be construed to mean "including" one or more flexure

26  members – i.e., not a single flexure member.  Defendants furthermore rely on their expert's

27  opinion that no written description of a single U-shaped flexure member is provided by the

28

34

**United States District Court**

For the Northern District of California

'037 patent, as evidenced by the fact that the only U-shaped flexure member referenced therein is depicted in Figure 12g, which illustrates a U-shape *in combination with* an omega shape, rather than a single U-shaped member.

These arguments can be resolved with reference to the court's claim construction. The court's claim construction order, for example, construed the term "flexure member" as "part of a longitudinal portion that provides flexibility." See Claim Constr. Order at 29. Thus, the flexure member described in claim 17 is merely a part of a longitudinal portion that provides flexibility, and that is also U-shaped.  To the extent that defendants question wether such a flexure member is described in the specification, the court concludes that it is.  For as plaintiffs correctly note, the specification makes clear that the flexible portion of the longitudinal strut that makes up the flexure member is "not particularly restricted."  See McCauley MSJ Decl., Ex. 27 at 3:57-62.  This disclosure would allow for an unrestricted flexure member, including a U-shape.  Thus, the court concludes that a single U-shaped flexure member is sufficiently described by the specification.

To the extent, moreover, that defendants also assert that the single U-shaped flexure member is not sufficiently described because figure 12g of the '037 patent depicts a flexure member with *both* a U-shape and an omega shape, but not a single U-shape, the argument is disingenuous.  It is premised on defendants' assumption that the illustrated flexure member can be cut in half to obtain a U-shape – an argument repeatedly rejected herein.  Furthermore, however, the patent claims cannot be limited to only those embodiments disclosed in the illustrated drawings.  Thus, even if the illustrated figure 12g would have to be cut in half to arrive at a U-shape, this is not really all that relevant.  The more relevant point is that the specification says that more embodiments than just those illustrated are possible and are covered, and that these embodiments of the flexure members are not restricted – i.e., they can encompass a single U-shape.

Defendants' second argument in support of their written description defense appears to be as follows:  that the claims in suit are drafted broadly enough that they have been

United States District Court

For the Northern District of California

construed by the court to include flexure members that *do* provide complementary extension and compression, as well as flexure members that *do not* provide complementary extension and compression; that there is no disclosure in the specification of flexure members that provide non-complementary extension and compression; and that the specification identifies, to the contrary, complementary extension and compression as an essential feature of the claims in suit.  Based on these facts, asserted by defendants' expert, defendants argue that the claims are broader than the specification points to, and are invalid for lack of written description.  See McCauley Decl., Ex. 14 at 111.

The court also rejects this argument.  While at first blush compelling, upon closer review, it misreads the court's claim construction order.  In deciding the proper construction to be given the term "flexure member," the court did not hold, as defendants assume, that the claim term covers flexure members that provide "*non*-complementary extension and compression" in addition to complementary extension and compression.  Rather, the court declined to read *any* aspect of extension and compression into the claim term.  Thus, properly construed, the claim language cannot be read to cover either aspect of the extension and compression limitations asserted by defendants.  As such, defendants' arguments that the claims are invalid for lack of written description because the specification does not cover non-complementary extension and compression (but the claim terms do), begin from a false premise.  To the extent that defendants argue that any other flexure member in the accused patent is not covered by the claim language because it does not provide for "flexibility" in the same way as plaintiffs' patent does, this is an infringement argument that must be decided at trial.

In sum, defendants' arguments do not demonstrate a lack of written description by clear and convincing evidence.  The court accordingly GRANTS summary judgment in plaintiffs' favor as to this defense.

H.     License Defense

Medtronic also seeks summary judgment with respect to defendants' license

United States District Court

For the Northern District of California

1  defense.  While difficult to fully comprehend, the contours of the defense appear to be as

2  follows:

3      In 1995, intervenor BSC entered into an agreement with Mr. Shukov, and with

4  Richard Press (both of whom were working for LPL doing stent cutting at the time).  Under

5  the terms of the Agreement (which was operative from 1995 to 1996), Mr. Shukov and Mr.

6  Press agreed that all "derivative inventions, improvements, or discoveries conceived or

7  made by" them "that relate to the manufacture or design of BSC's stents" would be made

8  available to BSC on a non-exclusive basis.  See McCauley MSJ Decl., Ex. 45 at ¶ 7.

9  Accordingly, defendants assert that based on this agreement, BSC has a license to any

10  stent-related invention to which Mr. Shukov and Mr. Press contributed.  Furthermore,

11  defendants assert that Mr. Shukov did, in fact, contribute to the inventions in the patents in

12  suit.  Thus, to the extent that any of the asserted claims include Mr. Shukov's inventions

13  made under the Agreement, BSC has a license to them and cannot be sued for

14  infringement.

15      As a general matter, it is true that if Mr. Shukov were a co-inventor of the patents in

16  suit, he would have had the right to license the patents, and pursuant to the Agreement,

17  may have been required to offer BSC a license.  See, e.g., Ethicon, Inc. v. U.S. Surgical

18  Corp., 135 F.3d 1456, 1466 (Fed. Cir. 1998); McCauley MSJ Decl., Ex. 45 at ¶ 7.

19  Defendants, however, have not come forward with anything approaching the clear and

20  convincing evidence needed to establish that Mr. Shukov was a co-inventor of the stent

21  covered by the patents in suit.  The most on-point evidence that defendants submit is a

22  single deposition statement from Drs. Penn and Ricci in which they testify that Mr. Shukov

23  at one time suggested removing an element from the design in question.  See McCauley

24  Opp. Decl., Ex. 8 at 55; Ex. 46 at 226-27.  This is insufficient to establish, however, either

25  that Mr. Shukov was an actual inventor, or that he contributed to the actual final design of

26  the stent claimed by the patents in suit.  This single suggestion on Mr. Shukov's part,

27  moreover, is outweighed by plaintiffs' evidence that Drs. Penn and Ricci, as well as Mr.

28

37

United States District Court
For the Northern District of California

1
2
3
4

Shukov, also testified that Mr. Shukov is *not* a stent designer and was not involved in the patented stent design; and while Mr. Shukov made suggestions regarding the manufacturability of designs, he made no suggestions regarding stent geometry or other design.  See Malaney Decl., Ex. 34 at 181-83, 205, 208, 327.

5
6
7
8
9
10
11
12
13
14

Defendants argue that this conflicting testimony creates a disputed issue of material fact on the question of inventorship, which is necessary to resolve the license question. The court, however, is unpersuaded that sufficient grounds exist to defeat summary judgment, for defendants' evidence cannot be said to provide evidence upon which a reasonable juror could conclude that Mr. Shukov is an inventor.  Furthermore, there are other problems with defendants' arguments.  As plaintiffs point out, the agreement in question binds only Mr. Shukov, not plaintiffs, and defendants have not submitted a persuasive legal theory explaining why, even if the stent made by Drs. Penn and Ricci could be credited to Mr. Shukov, it actually "relates to the manufacture or design of BSC's stents" such that the provision of the Agreement located in paragraph 7 is applicable.

15
16
17
18
19
20

In sum, there is insufficient evidence establishing that Mr. Shukov invented the underlying stent in question, or that even if he did, his inventions were, in fact, derivations from BSC's stents.  Defendants have therefore failed to create a disputed issue of material fact on the issue whether they are entitled to invoke the license agreement in question as a bar against plaintiffs' infringement action.  Accordingly, the court hereby GRANTS summary judgment in plaintiffs' favor on this question.

21

I.    Applicable Priority Date

22
23
24
25
26
27

Medtronic contends that it is undisputed that claims 1, 8-9, 12-13, 16, 20, and 55 of the '037 patent are entitled to a priority date of March 5, 1996.  Accordingly, Medtronic seeks summary judgment establishing this priority date, and the fact that no reference dated after March 5, 1996 may be considered "prior art" to any of the foregoing claims.  In response, defendants do not contest this point, and instead concede that the claims are "entitled to a priority date of March 5, 1996."

28

38

**United States District Court**

For the Northern District of California

1
2
3

In view of defendants' concession, the court accordingly GRANTS summary judgment in Medtronic's favor insofar as priority dates are concerned.  The foregoing claims are entitled to a March 5, 1996 priority date.

4

J.      Administrative Motions to Seal

5
6
7
8
9
10
11
12
13

Both parties have also filed numerous administrative motions, requesting numerous documentary and testimonial exhibits, as well excerpts from the parties' briefs, be filed under seal.  With respect to many, if not the majority of these documents, the parties request sealing based solely on the confidentiality designations made pursuant to the underlying protective order in the case.  For the remaining exhibits, the parties have attempted to establish the requisite foundation for sealing, pursuant to the standards previously relied on by this court and enunciated in Kamakana v. City of Honolulu.  See 447 F.3d 1172, 1179-80 (9th Cir. 2006)("compelling" reasons must be shown to seal judicial records attached to a dispositive motion).

14
15
16
17
18
19
20
21

With respect to the vast majority of documents submitted by the parties, the court finds that the parties have failed to demonstrate a compelling need for filing the documents under seal.  The cursory reliance on confidentiality designations made pursuant to the underlying protective order is clearly insufficient.  Even in those instances, moreover, that the parties have duly endeavored to establish a compelling need for sealing – based, for example, on the documents' revelation of critical proprietary information or trade secret information –  the court's own review of those documents does not immediately disclose that a compelling need for sealing exists.

22
23
24

There are, however, certain documents for which a sufficient foundation for sealing has been demonstrated.  Specifically, the court finds that the following documents warrant sealing:

25
26

- Declaration of Kevin J. Malaney ISO Plaintiffs' Motion for Summary Judgment, Exs. 27, 28 at 111-13;

27

- Declaration of Kadie M. Jelenchick ISO Plaintiffs' Response to Defendants'

28

United States District Court

For the Northern District of California

Motions, Exs. 2, 5, 10, 16, 18, 58 at AB0546158-AB0546173;

• First Rothman Report, Ex. 16 to the First Rothman Report;

• Second Rothman Report, Exs. 47, 69 at page 71 only, 73

Accordingly, the court hereby GRANTS the parties' request to seal the above-referenced documents.  With respect to the remaining documents requested to be filed under seal, however, the parties' various requests are DENIED.  With respect to these documents, the court furthermore instructs the parties that all documents must be filed in the public record within 10 days of the date of this order.

K.     Conclusion

For the reasons stated above, the court hereby GRANTS summary judgment in part and DENIES summary judgment in part, as follows:

1.     Anticipation.  The court DENIES both parties' motions for summary judgment on the question whether Wijay anticipates the asserted claims the '255 patent; GRANTS summary judgment as to plaintiffs and DENIES summary judgment as to defendants on the issue whether Wijay anticipates claim 1 of the '037 patent; GRANTS summary judgment as to defendants and DENIES summary judgment as to plaintiffs on the issue whether Wijay anticipates claim 22 of the '037 patent; and GRANTS summary judgment as to plaintiffs on the issue whether Fischell anticipates the claims of the '037 or '255 patents.

2.     Obviousness.  The court DENIES defendants' motion for summary judgment on the issue whether the asserted claims of the '037 and '255 patents are obvious in light of the Wijay, Fischell and/or Israel prior art references.

3.     Admissibility of internal work/designs.  The court DENIES plaintiffs' motion for summary judgment on the issue whether certain internal work/design evidence relied on by defendants is inadmissible per se.

4.     Indefiniteness.  The court GRANTS plaintiffs' motion for summary judgment

on the issue whether claim terms "flexure member," "arcuate," and "U-shaped" are indefinite, and DENIES summary judgment as to defendants on the issue whether the term "U-shaped" is indefinite.

5.    <u>Derivation</u>.  The court DENIES plaintiffs' motion for summary judgment with respect to defendants' derivation defense.

6.    <u>Written description</u>.  The court GRANTS summary judgment in plaintiffs' favor with respect to defendants' written description defense.

7.    <u>License defense</u>.  The court GRANTS summary judgment on the issue whether defendants are entitled to invoke the relevant license agreement as a bar to plaintiffs' infringement action.

8.    <u>Applicable Priority Dates</u>.  The court GRANTS summary judgment in plaintiffs' favor insofar as priority dates are concerned, and rules that claims 1, 8-9, 12-13, 16, 20, and 55 of the '037 patent are entitled to a priority date of March 5, 1996.

**IT IS SO ORDERED.**

Dated: February 6, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge

41