UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MEDTRONIC VASCULAR INC., et al.,

    Plaintiffs,

    v.

ABBOTT CARDIOVASCULAR SYSTEMS, INC., et al.,

    Defendants.

_____/

No. C 06-1066 PJH

**ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING SUMMARY JUDGMENT IN PART**

    The parties' cross-motions for summary judgment came on for hearing on April 15, 2009 before this court. Plaintiffs, Evysio Medical Devices ULC ("Evysio") and various Medtronic entities[1] (collectively "plaintiffs" or "Medtronic"), appeared through their counsel, Jeffrey N. Costakos. Defendants Abbott Cardiovascular Systems, Inc., Abbott Laboratories, and Abbott Vascular, Inc. ("Abbott") appeared through their counsel, Michael Morin, and Brian Kacedon. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS the motions for summary judgment in part and DENIES the motions for summary judgment in part, as stated at the hearing, and as follows.

## BACKGROUND

    Plaintiff Evysio Medical Devices ULC ("Evysio") is the assignee and owner of U.S. Patent Nos. 6,858,037 (the "'037 patent") and 7,094,255 (the "'255 patent"), two patents that are primarily directed at medical stenting devices for use in the human coronary system. The various Medtronic Vascular plaintiff entities are licensees and sub-licensees of Evysio's patents.

---

[1] The Medtronic entities include: Medtronic Vascular, Inc.; Medtornic USA, Inc.; Medtronic, Inc.; and Medtronic Vascular Galway, Ltd.

Collectively, plaintiffs have sued defendants for infringement of the '037 and '255 patents, based on certain accused stent products – the Vision, MiniVision, and Xience coronary stents. See generally Second Amended and Supplemental Complaint for Patent Infringement ("SAC"). Plaintiffs seek corresponding relief in the form of lost profits and reasonable royalty damages totaling over $200 million, in addition to damages through the time of trial and prejudgment interest. Plaintiffs' lost profit claim is based on (1) sales of Xience and Promus stent systems manufactured by defendants in the U.S., and sold outside the U.S; and (2) certain sales of Vision, MiniVision, and Xience stents sold inside the U.S.

The parties have now filed cross-motions for summary judgment regarding plaintiffs' lost profits damages claim. The parties have also filed several requests to seal certain documents.

**DISCUSSION**

A.  Legal Standard

Generally speaking, a patent owner is entitled to receive from the infringer "damages adequate to compensate for the infringement." To recover lost profits damages specifically, the patentee must show a reasonable probability that, "but for" the infringement, it would have made the sales that were made by the infringer. See Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1545 (Fed. Cir. 1995). To that end, the Federal Circuit has recognized a four factor test that allows a patentee to prove entitlement to lost profit damages. Under that test, a patent owner must prove: (1) demand for the patented product, (2) the absence of acceptable noninfringing substitutes, (3) the patentee's manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit the patentee would have made. See, e.g., Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (Fed. Cir. 1979)(articulating "Panduit test").

Once a patentee has made this four part showing, the burden shifts to the infringer to demonstrate that the patentee's lost profits claim is unreasonable. See Grain

Processing Corp. v. Am. Maize-Prods., 185 F.3d 1341, 1349 (Fed. Cir. 1999).

B.    The Parties' Cross-Motions

Defendants seek summary judgment as to two issues:[2] (1) that Medtronic is not entitled to lost profits on sales of Xience and Promus stents manufactured in the U.S. but sold abroad during the relevant time frame, because defendants had an available, acceptable noninfringing alternative to manufacturing the stents in the U.S; and (2) that Medtronic cannot recover lost profits for any sales of the Vision, MiniVision, and Xience stents sold inside the U.S., since recovery is precluded by the finding of infringement against Medtronic that was entered in unrelated litigation pending in a Delaware district court (the "Lau litigation").[3]  Plaintiffs, for their part, also seek summary judgment with respect to the Lau litigation issue, though their argument is focused on precluding defendants from asserting a damages offset in this case, based on any damages awarded in the Lau litigation.  In addition, plaintiffs independently seek a summary judgment ruling that defendant is barred from introducing evidence of a hypothetical Vision stent, or other hypothetical stent designs, in seeking to demonstrate the presence of an acceptable, noninfringing alternative as part of a lost profits analysis.

    1.    Lost Profits Based on Sales of Xience and Promus Stents Manufactured in the U.S. but Sold Abroad

This issue focuses on the second prong of the Panduit test – i.e., the absence of

---

[2] Defendants' motion additionally seeks summary judgment as to plaintiffs' lost profits claim based on Vision and MiniVision stents that were manufactured and sold abroad but temporarily sterilized in the U.S. prior to sale.  Plaintiffs, however, respond that they have made no claim for lost profits based on these sales.

[3] In February 2005, a jury in a U.S. District Court in Delaware found Medtronic guilty of infringing certain of patents proprietary to defendants (i.e., the "Lau patents").  All Medtronic stents sold since 1997, including the Driver and MicroDriver stents, were found to infringe the Lau patents.  Medtronic's Endeavor stent, which is a drug coated Driver stent, was also found by the district judge to infringe the Lau patents as well. See, e.g., Advanced Cardiovascular Sys. Inc. v. Medtronic Vascular, Inc., 579 F. Supp. 2d 554, 562 (D. Del. 2008).  Final judgment was entered against Medtronic in November 2008.  Medtronic appealed the case to the Federal Circuit, however, where it is now pending.

3

acceptable noninfringing substitutes. Defendants argue that plaintiffs cannot demonstrate the absence of an available, acceptable, noninfringing alternative to Xience and Promus stents manufactured in the U.S., because there *was* such an alternative: the manufacture of Xience and Promus stents in Ireland. Plaintiffs, by contrast, contend that defendants fail to prove that they had the necessary equipment, know how and experience to implement its alternative whenever it chose to do so during the time of infringement.

Since the Xience and Promus stents were first manufactured in California in March 2006 (with production later moving to Ireland beginning May 2007), defendants preliminarily frame the relevant question as whether, from February 2005 (the date the first patent in suit issued) to March 2006, defendants could have reasonably planned for production of the stents in Ireland. Defendants then answer this question in the affirmative, arguing that moving production of its stents to Ireland in early 2006 instead of May 2007 would have been an acceptable noninfringing alternative, based on the following undisputed facts: the space to manufacture drug-eluting stents already existed in Ireland as of 2006; the Ireland facility had adequate capacity to manufacture all of the Xience and Promus stents manufactured in the U.S. over that time period; costs associated with moving any equipment to Ireland would have been de minimus; and the fact that defendants did, in fact, move production to Ireland in 2007 further lends support to its ability to do so earlier, had it chosen to. Defendants support these facts with the declarations of David P. Brown, defendants' manager of product supply and demand, and Laura B. Stamm, defendants' expert on issues of defendants' offshore manufacturing capabilities. See, e.g., Declaration of David P. Brown ISO Def. MSJ ("Brown Decl."), ¶¶ 13-19; Declaration of Laura B. Stamm ISO Def. MSJ ("Stamm Decl."), Ex. 1.

Medtronic does not dispute that the availability of production facilities in Europe for defendants' stents might defeat plaintiffs' lost profit showing, *if* undisputed that defendants had the necessary time, equipment, and knowledge to set up manufacturing in Ireland "whenever it chose to do so" during the relevant time period. They rely on the following

4

facts, however, for undisputed proof of the contrary: defendants knew of the patents in suit as of 2005, yet did not actually move production of Xience and Promus stents to Ireland until May 2007, thus leading to the reasonable inference that defendants could not have done so prior to May 2007; Mr. Pacitti, defendants' 30(b)(6) witness on issues regarding defendants' drug-eluting stent manufacturing capacity outside the U.S., testified earlier that he did not know whether the Ireland facility could manufacture enough stents to meet worldwide demand; the actual set up of a production facility in Ireland in 2006 would have been inconsistent with defendants' usual business practices, which required production lines to go through research and development in California, followed by a technology process, before moving production elsewhere; and the actual transfer of production of the Xience and Promus stents from California to Ireland took at least 12 months (ending in May 2007), thus confirming that equipment, time, know how, and experience would all have combined to prevent a quick implementation of production efforts in Ireland. See, e.g., Declaration of Kadie M. Jelenchick ("Jelenchick Decl."), Ex. 1 at 195; Ex. 4 at 65-69, 90-91, 147, 197, 201-03, 241-42; Ex. 6. Plaintiffs also dispute the inference to be drawn from Mr. Brown's testimony, as they note that he testified that he did not know everything that needed to be done before the first product could come off the line in Ireland, or how long this would even take – thereby minimizing the value of his testimony. See Jelenchick Decl., Ex. 4 at 202-03.

On balance, the court finds that the parties' contrasting arguments and evidentiary showings present disputed issues of material fact. Defendants, for example, have submitted expert and witness testimony stating that defendants had manufacturing facilities for the Xience and Promus in Ireland as of March 2006, "had the ability to manufacture" the stents in 2006, and also could have easily and quickly had the equipment ready to do so. See Brown Decl., ¶¶ 14-18. Plaintiffs, by contrast, have disputed this showing by introducing evidence that defendants' usual business practices would have required compliance with research and development procedures in California, as well as technology

procedures, such that production in Ireland in 2006 could not have happened. See, e.g., Jelenchick Decl., Ex. 4 at 65-69, 90-91, 147, 197, 201-03. Thus, there is a material dispute of fact as to the overall question whether production of Xience and Promus stents in Ireland was a properly "available" alternative as of March 2006 or at any other time during the relevant infringement period. The issue must therefore be tried to – and resolved by – a jury.[4]

Finally, to the extent that plaintiffs have objected to the Brown declaration and testimony, the court OVERRULES plaintiffs' objections. Plaintiffs object that Brown was identified by defendants as an employee expert on defendants' final day to disclose damages experts, and that Brown's testimony is more like an expert report than fact or lay opinion testimony, as promised by defendants. Plaintiffs also object that the declaration contains hearsay. However, plaintiffs do not expressly identify which statements are hearsay, nor is Brown's declaration obviously outside the scope of lay opinion testimony.

Thus, defendants' motion for summary judgment is DENIED with respect to the availability of an acceptable noninfringing alternative to defendants' U.S.-made Xience and Promus stents during the relevant time frame. To the extent, furthermore, that defendants' motion additionally seeks summary judgment as to plaintiffs' lost profits claim based on Vision and MiniVision stents that were manufactured and sold abroad but temporarily sterilized in the U.S. prior to sale, defendants' motion is also DENIED as moot, in view of plaintiffs' disavowal of any right to relief based on this theory.

---

[4] Medtronic also argues that Ireland manufactured stents would not have been an acceptable alternative, even if it had been available. Plaintiffs note that defendants have admitted that during the relevant damages period, certain countries required their Xience and Promus stents to be manufactured in the U.S. See Brown Decl., ¶ 19. This appears to be a misreading of the Brown declaration, however. For as defendants explain, paragraph 19 of the Brown declaration says that, while five countries required defendants to ship Xience stents manufactured in the U.S., even after production had moved to Ireland in 2007, this was only because production of the stents had originally begun in the U.S. in 2006. If defendants had begun production of the Xience stents in Ireland in 2006, the countries' U.S.-made requirements would have been moot. See id. Thus, this ground is not a basis for denying defendants' motion outright.

6

### 2. Whether the Lau Litigation Precludes Medtronic's Claim for Lost Profit Damages

The parties dispute the effect of the Lau litigation on plaintiffs' lost profits claim. Defendants, for their part, seek a ruling that Medtronic's claim for lost profits is precluded in its entirety, because it is based on the sale of certain Medtronic stents (specifically, the Driver, MicroDriver, and Endeavor stents) that the Lau court has already found infringe defendants' patent rights. In view of the infringement finding, defendants argue, Medtronic's stent sales would have been unlawful to sell in the but-for infringement world, and the third Panduit factor – i.e., plaintiffs' capability to exploit the demand for its products – cannot be satisfied. Plaintiffs, naturally, disagree, arguing that the Lau litigation is on appeal and therefore unsettled insofar as the infringement finding goes, and furthermore that the Lau court actually denied defendants' subsequent request to enjoin Medtronic from continuing to sell its stents. Thus, there can be no basis for holding those sales unlawful, when the Lau court has expressly permitted those sales to continue. Moreover, plaintiffs note that defendants' legal argument is unprecedented, and without support in the case law.

Defendants' argument here is an interesting one. As an initial matter, it has intuitive appeal. It is true, after all, that the Lau court found Medtronic's stents to infringe defendants' own patents, albeit in unrelated litigation. Thus, it makes sense that defendants argue that in view of the infringement finding, Medtronic should not be allowed to argue here that it would have been legally capable of producing and selling stents that it had no right to lawfully be selling.

While appealing at first blush, however, there are significant problems with defendants' argument. First, as plaintiffs note, the Lau litigation is in the appeal stage. Thus, although the merits of the infringement finding are final for purposes of the trial court litigation, there is a real risk that the appeal court might overturn the finding. It is therefore premature to preclude plaintiffs' claim on the basis of a finding that may not ultimately be

upheld. Moreover, it is at least worthy of note that the Lau court declined to enjoin Medtronic from continuing its medical stent sales. This fact tends to cut against defendants' claim that Medtronic would not have had the capability of selling its stents – after all, it still has the legal capability of doing so *after* an infringement finding.

More importantly, however, there is no legal precedent that supports defendants' argument. Defendants themselves concede that they are "unaware of any ruling by the Federal Circuit on the issue of whether a patentee may claim lost profits based on sales of an infringing product...". See Def. MSJ Op. Br. at 16:18-19. This, combined with the above concerns regarding the adoption of the Lau court's findings for purposes of preclusive effect here, counsels against accepting defendants' invitation to create new law.

In sum, therefore, the court finds that defendants have failed to persuasively establish Medtronic's failure to satisfy the third Panduit factor (i.e., the capability factor). To that end, summary judgment in defendants' favor as to this particular ground is DENIED.

Finally, to the extent that plaintiffs have also sought summary judgment with respect to the Lau litigation, but as to a different issue – i.e., the appropriateness of offsetting any damage award in the present case by any damages awarded in the Lau litigation – plaintiffs' motion on that ground is also DENIED as moot, in view of the parties' stipulation at the hearing conceding that, to the extent any off-setting is warranted based on damages awarded in either litigation, the issue shall be decided in connection with whichever case is resolved last.

3.      Hypothetical Stent Designs

Last, to the extent plaintiffs independently seek a summary judgment ruling that defendant is barred from introducing evidence of a hypothetical Vision stent, or other hypothetical stent designs as part of a lost profits analysis, since neither is an acceptable noninfringing alternative, plaintiffs' motion is GRANTED, for the reasons stated at the hearing.

C.      Motions to Seal

8

The parties have filed several requests to seal.  Plaintiffs, for their part, seek to have the following filed under seal:  exhibits 1-4 of the Costakos Declaration filed in support of plaintiffs' summary judgment motion, and all corresponding brief excerpts; footnote 4 of their opposition brief to defendants' summary judgment motion filed under seal, as well as exhibits 2-3, 6-7, 9,  and 11-12 of the Jelenchick Opposition Declaration.  While plaintiffs request sealing, defendants support the request.  Plaintiff contends that certain of the information contains highly sensitive and proprietary business information relating to Medtronic's manufacturing and marketing capacity for its Driver and Endeavor stents, while defendants assert that the information contains confidential and trade secret information related to defendants' product design and development processes and costs.

As for defendants, they seek to file under seal exhibit C of the McCauley Declaration filed in support of its summary judgment motion, which plaintiffs assert was filed under seal in the Lau litigation, and exhibits 2-4 of the Stamm Declaration filed in support of defendants' summary judgment motion, which defendants assert contain confidential and sensitive information.  Defendants also move to file under seal portions of defendants' reply brief in support of summary judgment, on grounds that the information contained therein has been designated confidential by plaintiffs, or would cause competitive harm to defendants if disclosed.

Having reviewed the parties' papers and the underlying documents for which sealing is requested, the court hereby DENIES the parties' requests to seal the above documents, for the parties' attempts to establish the requisite foundation for sealing, pursuant to the standards previously relied on by this court and enunciated in <u>Kamakana v. City of Honolulu</u>, are ultimately unpersuasive.  <u>See</u> 447 F.3d 1172, 1179-80 (9th Cir. 2006)(" compelling" reasons must be shown to seal judicial records attached to a dispositive motion).

To the extent, moreover, that the parties' motions also seek to file under seal additional exhibits not discussed above, the requests to seal these additional exhibits are

9

largely supported only by the parties' designation of the documents as confidential, without further explanation. This falls short of the <u>Kamakana</u> standard, however, and such requests are similarly DENIED.

## CONCLUSION

For all the foregoing reasons, the court GRANTS the parties' cross-motions for summary judgment in part, and DENIES the parties' cross-motions in part, as follows:

1. Defendants' motion for summary judgment on grounds that there was an acceptable noninfringing alternative to defendants' U.S.-made Xience and Promus stents available during the relevant time frame is DENIED.

2. Defendants' motion for summary judgment as to plaintiffs' lost profits claim, based on Vision and MiniVision stents that were manufactured and sold abroad but temporarily sterilized in the U.S. prior to sale, is DENIED as moot.

3. Defendants' motion for summary judgment on grounds that Medtronic's claim for lost profits is precluded in its entirety, due to a district court ruling in the Lau litigation finding that certain Medtronic stents infringe defendants' patent rights, is DENIED.

4. Plaintiffs' motion for summary judgment on grounds that any damages awarded in the Lau litigation cannot be used to offset damages in the instant litigation, is DENIED as moot; and

5. Plaintiffs' motion for summary judgment on grounds that neither the Hypothetical Vision stent nor other hypothetical stent designs are available non-infringing alternatives barring plaintiffs' claim for lost profits, is GRANTED.

6. All motions to seal filed in conjunction with these motions are DENIED.

**IT IS SO ORDERED.**

Dated: May 15, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge